Lakemont Civic Association, Inc., Appellant, *v.* Central Blair County Sanitary Authority.

Argued June 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*T. Dean Lower,* for appellant.

*Edward L. Springer,* with him *Harold E. March, Louis M. Tarasi, Jr.,* and *Burgwin, Ruffin, Perry & Pohl,* for appellee.

OPINION BY RHODES, P. J., September 13, 1962:

Plaintiff filed a complaint on September 9, 1961, and an amended complaint on October 6, 1961 (hereinafter called "complaint"), in the Court of Common Pleas of Blair County, seeking to prevent the defendant, Central Blair County Sanitary Authority, from accepting a newly constructed sewer system from the contractor until wet weather tests proved the system met the contract requirements. On January 8, 1960, the authority signed a contract with New Enterprise Stone and Lime Company, Inc., providing for the construction of a system that would collect sewage and transmit it to the system of Hollidaysburg Sewer Authority for disposal. On September 12, 1961, or three days after the filing of the complaint, defendant authority accepted the sewer system but did not put it into operation. Defendant filed preliminary objections to the complaint on September 26, 1961, and to the amended complaint on October 26, 1961. Plaintiff alleged that water seepage and infiltration from outside the system during wet weather would exceed substantially that allowable under the contract; that the acceptance without proper tests deprived the authority of the benefit of the contractor's performance bond; and that such acceptance was an abuse of discretion. The court was requested to cancel acceptance of the sewer system until satisfactory wet weather tests and inspection proved the requirements of the contract

had been met. The complaint further stated that "plaintiff . . . questions the adequacy, safety and reasonableness of the Defendant Authority's services in finally accepting the said sewer system from the Contractor before the said sewer system conclusively met the infiltration and seepage requirements of the contract," and alleged that the court of common pleas had jurisdiction under section 4 of the Municipality Authorities Act of May 2, 1945, P.L. 382, as amended by the Act of October 7, 1955, P.L. 671, 53 PS §306 B(h), giving the court jurisdiction over "rates and services" of municipal authorities.

Defendant's preliminary objections set forth, inter alia, that the Municipality Authorities Act of 1945, as amended, 53 PS §306B(h), gave the court jurisdiction only over "rates and services," whereas, "in this case, the Plaintiffs are trying to question the services of the Defendant before they have been put into effect." After argument the court below dismissed the complaint on the ground that it did not state a justiciable cause of action, and that the facts averred in the complaint did not, in any event, show an abuse of discretion upon the part of the defendant authority in accepting the sewer system from the contractor.

The contentions of appellant on its appeal are (1) that the court of common pleas had jurisdiction to determine whether or not the defendant authority provided adequate, safe, and reasonable services to its citizens in accepting from the contractor the sewer system in controversy; (2) that the court below acted improperly in dismissing the complaint on the grounds that it did not plead facts sufficient to constitute an abuse of discretion on the part of the defendant authority.

Section 4B(h) of the Municipality Authorities Act of 1945, as amended by the Act of October 7, 1955, P.L. 671, 53 PS §306B(h), gives the authority the

power, inter alia, "to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the areas served." The same section of the Municipality Authorities Act, as amended, gives the court of common pleas jurisdiction over rates and services, as follows: "Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of the county wherein the project is located, or if the project is located in more than one county then in the court of common pleas of the county wherein the principal office of the project is located. The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service." See *Yezioro v. North Fayette County Municipal Authority,* 193 Pa. Superior Ct. 271, 278, 164 A. 2d 129. The court below was correct in dismissing the complaint which did not set forth a cause of action within the court's jurisdiction as relating to a question of "rates or service" of the authority as defined in section 4B(h) of the Municipality Authorities Act of 1945, as amended, 53 PS §306B(h).

Acceptance or rejection of the sewer system, and enforcement of the terms of the construction contract were essentially matters of internal managerial discretion and were not related to questions of rates or service. Cf. *Pennsylvania Telephone Corporation v. Pennsylvania Public Utility Commission,* 153 Pa. Superior Ct. 316, 326, 33 A. 2d 765; *Duquesne Light Company v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 166, 172, 63 A. 2d 466. Appellant's complaint alleging that the sewer system would not meet the contract requirements in a future wet weather test did not set forth presently existing factual matters.

There is no allegation that competent tests of the system were not made or that there were any present defects. It merely averred that tests during a wet season will in the indefinite future show the system to be defective. This is pure speculation and would not justify judicial interference. Moreover, the managerial act of acceptance of the sewer system had no direct relation to the question of the authority's rates or service. Any possible relationship was contingent and remote. We find no merit in appellant's argument that the word "service" covers the acceptance of the sewer system. As the court below aptly stated: "The purpose of the Authority in the present case is to provide a system for the performance of a service to a designated community, namely the collection and disposal of sewage. The act of accepting the system from the contractor is preliminary to providing this service to the public. It is purely an administrative act solely within the jurisdiction of the Authority, and as such is not subject to review by the court in the absence of an abuse of discretion, fraud, misconduct, or arbitrary and capricious action." Matters of corporate policy and management preliminary to rendition of service are distinct from those directly involving rates or service after service has commenced. On the other hand, for example, questions as to who shall be served and what lines shall be abandoned are concerned directly with "service." Cf. *Yezioro v. North Fayette County Municipal Authority*, supra, 193 Pa. Superior Ct. 271, 164 A. 2d 129.

Appellant apparently relies upon the *Yezioro* case. We there held that the Municipality Authorities Act of May 2, 1945, P.L. 382, as amended by the Act of October 7, 1955, P.L. 671, 53 PS §306B(h), gave the court of common pleas jurisdiction to pass upon "the adequacy and reasonableness of the utility service rendered by a water authority" with special reference

to proposed abandonment by the authority of service to certain consumers. The *Yezioro* case therefore is clearly distinguishable as a case in which the court of common pleas had jurisdiction over a question of "rates or service" as defined in the Municipality Authorities Act of May 2, 1945, P.L. 382, as amended by the Act of October 7, 1955, P.L. 671, 53 PS §306B(h).

Although the appellant in this statutory appeal attempts to question the internal management and the discretion of the authority in accepting the sewer system, its remedy, if any, would be in equity where it is established that the courts will not review the actions of governmental bodies or administrative tribunals in the absence of bad faith, fraud, capricious action, or abuse of power. *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 573, 109 A. 2d 331; *Hyam v. Upper Montgomery Joint Authority,* 399 Pa. 446, 455, 456, 160 A. 2d 539.

The order of the court below dismissing complaint is affirmed.

————

DISSENTING OPINION BY MONTGOMERY, J.:

I am not in agreement with the limited definition given by the majority to the word "services" as it is used in section 4 of the Municipality Authorities Act of 1945, as amended, 53 P.S. §306B(h). In my opinion, "services" are rendered to the public by Authorities equally as much in the acquisition of facilities as in the use of same. The Common Pleas Court is given jurisdiction over rates and services generally. It is not limited to cases in which services merely reflect upon the reasonableness or uniformity of rates, although it is difficult to imagine where such reflection does not occur. The Act is specific: "Any person questioning the reasonableness or uniformity of any rate fixed by any Authority *or* the adequacy, safety and reasonable-

ness of the Authority's services, *including extensions thereof,* may bring suit against the Authority in the court of common pleas . . ." (Emphasis supplied.)

In *Yezioro v. North Fayette County Municipal Authority,* 193 Pa. Superior Ct. 271, 164 A. 2d 129, this Court recognized the jurisdiction of the Common Pleas Court to compel the Authority to accept an abandoned private water line so that it might fulfill its obligation to serve the public; and it went further, to recognize the court's power to retain jurisdiction "for the purpose of ascertaining what repairs or replacements should be made in the event that the line loss or leakage becomes excessive or the line unserviceable."

The question which naturally follows and which must be answered in this case is: If the court, in that case, may give its attention to the adequacy, safety and reasonableness of the facilities of the Authority for the purpose of determining the propriety of abandoning same, why may it not in the present case give its attention to similar facilities for the purpose of acceptance? The only difference I can observe between the two situations is that in the *Yezioro* case the Authority contended that the water line leaked unreasonably and should be abandoned, whereas in the present case, the customers contended the sewer leaked and admitted unreasonable amounts of outside water, for which reason it should not be accepted by the Authority.

The definition of "service" under the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1102(20), covers the present situation by its broad definition, " 'Service' is used in this act in its broadest and most inclusive sense, . . ." The Municipality Authorities Act contains no definition of the term and therefore places no limitation on its generally accepted definition, which should be adopted under the provisions of the Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, §33, 46 P.S. §533, "Words

and phrases shall be construed according to rules of grammar and according to their common and approved usage; . . ."[1]

Furthermore, I fail to see any service rendered by the Authority in this case other than to provide the sewer. It will not treat the sewage. It, or its lessee, will merely permit customers to empty sewage into its sewer, which sewage thereafter will flow by gravity to and empty into the system of the Hollidaysburg Sewer Authority for disposal. This Authority, in fact, will do nothing more than have the sewer built. It has arranged to lease it immediately upon acceptance to the Township of Logan. If no appeal is allowed from this single function or act, the doors will be opened wide to possible fraud.

It may be argued further (without necessity, in my opinion), that jurisdiction should attach because this complaint is also related to the rates, which these petitioners will be required to pay, since they will be fixed by the amount of water that flows through the sewer. If excess water in unreasonable amounts finds its way into the sewer from infiltration outside of the connections made by the customers, the rates will necessarily be higher.

I firmly believe that the Municipality Authorities Act of 1945 has given the Common Pleas Court jurisdiction in this case.

I also disagree with the majority in its conclusion that the complaint filed by the appellant does not set

---

[1] In *Commonwealth v. Fidelity & Deposit Company of Maryland*, 355 Pa. 434, 438, 50 A. 2d 211, 213, our Supreme Court placed its appproval on the following statement made by the lower court in that case, "The phrase 'for service rendered by public utilities' was obviously intended to cover facilities such as electricity, gas and telephones supplied by public utilities."

forth sufficient factual allegations.[2] It contains the allegation that the sewer does not meet contractual requirements as to infiltration of outside water under conditions that would exist in wet weather. Of course water would not infiltrate in unreasonable amounts in dry weather, because there would be no outside water present to infiltrate. However, when water is present on the outside, the sewer is so defective that such water will find its way into it to cause the complainants to pay unreasonable rates for their sewage rights. This is the only meaning to be placed on the allegations of the complaint. It is not "pure speculation" and does set forth presently existing factual matters, in my opinion. If such conditions can be proved to exist, it naturally follows that the Authority abused its discretion in accepting the sewer.

I dissent and would reinstate the complaint.

---

[2] "When the weather was sufficiently wet for a satisfactory wet weather inspection, the amount of infiltration and seepage of water from outside the system was substantially in excess of that permitted by the said Contract." (5a)

"Experience conclusively proved the Plaintiff and its members to be correct as the said sewer system had extremely excessive infiltration and seepage all during the wet weather of the winter of 1960-61 and the spring of 1961. Although repairs were made to the said sewer system in 1961, following the repairs, during a period of decreasing wet weather, the infiltration and seepage continued to be in excess of the maximum allowable under the Contract. Not until the dry weather of the summer of 1961 was the infiltration and seepage below the maximum allowed by the Contract." (7a)