**Cumberland-Franklin Joint Municipal Authority v. Rhinehart**

*John McCrea, III,* for plaintiff.
*John H. Broujos,* for defendant.

SHEELY, *J.,* December 18, 1981—On July 17, 1979, plaintiff filed a claim for sewer services furnished to a trailer court, a store, and an apartment owned by defendants in Shippensburg Township, Cumberland County, Pa. The claim for unpaid charges including interest of $8,455.48 covered a period from November, 1978, to July, 1979, and was commenced in the form of a municipal lien. Defendants filed an affidavit of defense on December 4, 1979, to which plaintiff replied on March 30, 1981. A non-jury trial was held before this court on June 2, 1981, at which all interested parties were present and gave testimony.

Five municipalities and two municipal authorities are involved in the present controversy. Prior to the creation of the Cumberland-Franklin Joint Municipal Authority (hereinafter CFJMA), only the Shippensburg Borough Authority in conjunction with the Shippensburg Borough provided sewage service to any of the five municipalities involved herein.

The Borough Authority primarily served the Borough of Shippensburg, but also served approximately 100 customers in adjacent municipalities including but not limited to the Shippensburg State College, College Park Apartments, and defendants Rhineharts. These three properties are all located within Shippensburg Township and are directly involved in the present controversy.

CFJMA was formed to service the four municipalities located outside the Borough of Shippensburg, while the Borough Authority remained in existence. On January 15, 1977, CFJMA entered into a Joint Agreement with the Borough

and Borough Authority, which allocated service territories to each Authority and provided for disposal of CFJMA waste. Since CFJMA owns only sewer lines and pumping stations, the joint agreement provided that the two authorities would jointly upgrade the Borough's sewage treatment plant and that CFJMA would have the right to serve and assess all out-of-borough properties which had previously been served and assessed by the Borough and Borough Authority, *with two exceptions,* College Park Apartments (hereinafter CPA) and Shippensburg State College (hereinafter SSC).

The reason for the exceptions to CFJMA service territory for CPA and SSC were provided for in the Joint Agreement as follows, "That Shippensburg State College located entirely within Shippensburg Township . . . and JMS Development Corporation, doing business as College Park Apartments, also entirely located within the Shippensburg Township . . . and consisting of an apartment house complex, is being serviced by the Borough of Shippensburg and Shippensburg Borough Authority pursuant to the terms and conditions of written agreements between those entities."

The evidence indicates that the rates charged by CFJMA to its customers are substantially higher than the rates charged by the Shippensburg Borough Authority.

Defendants' affidavit of defense alleges that the joint agreement was illegal, arbitrary, and discriminatory in that two other large commercial users (SSC and CPA) were excluded from the CFJMA system and continued to pay the lower Borough rate. Defendant also alleges that in or about 1961, defendants entered into an agreement with the Borough of Shippensburg for connection to the

sewage system provided by the Borough for treatment of sewage from the premises of defendants. At trial, defendant testified that in consideration for permission to connect with the Borough sewage system, defendant agreed to raze two buildings on Victory Avenue at no cost to the Borough. As evidence of this agreement, defendant presented the Shippensburg Borough Council minutes of a May 28, 1962 meeting which state:

The Borough Manager reported that he believed he had someone who would enter into an agreement with the Borough to remove the buildings at Victory Avenue at no cost to the Borough. Mr. Currens moved that the proper officers be authorized to enter into such an agreement. That motion was carried.

Thereafter, defendant offered the minutes of June 12, 1962 which provide:

The request of Ray Rhinehart to utilize the Borough sewers for disposal from a proposed trailer camp, which is adjacent to our sewer line, was discussed. Mr. Smith moved that he be permitted to make this connection. Motion carried.

Other testimony concerning the above-alleged agreement indicates that (1) CFJMA and the Borough Authority ascertained during service area negotiations that defendant had no written agreement granting him a right to continue as a customer of the Borough Authority, (2) before razing the building, defendant signed a disclaimer of liability to the Borough, which disclaimer constituted the sole written document of the transaction, yet failed to mention sewage hook-up, (3) the cost to defendant of razing the building on Victory Avenue was approximately $1000, and (4) defendant ac-

quired approximately $1000-$2000 worth of building materials as a result of the project.

Defendant received his first quarterly billing from CFJMA in January, 1979, and has continued to receive the same up to the present time. As a result of defendant's impression of discrimination, defendant only partially paid these bills; the bulk of the assessments against defendant remain unpaid.

It is not asserted that CFJMA discriminates within its own service area as it charges a flat $20.50 per domestic dwelling unit. Defendants' claim of discrimination is directed toward the Joint Agreement's provision which establishes the service areas between CFJMA and the Borough Authority.

## DISCUSSION

### Has Defendant Presented a Viable Claim of Discrimination Which Would Void the Joint Agreement and Defeat the Sci. Fa. Sur Municipal Lien Imposed Herein?

Our jurisdiction to determine this controversy is founded in §306 of the Municipal Authorities Act of 1945, P.L. 382, as amended, 53 P.S. §101 et seq. Section 306 enumerates the general purposes and powers conferred upon municipal authorities. Section 306B.(h) governs an authority's power to determine, inter alia, the extent of its service territory, and further provides a forum for reviewing an authority's exercise of such power:

Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of the county wherein the project is

located . . . The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service.

Since defendant Rhinehart is challenging the reasonableness of the Authorities' service and all parties are located in Cumberland County, this court properly has jurisdiction over this matter.

Also preliminary to a discussion of the joint agreement's validity is a resolution of whether the defense as presented is a proper challenge to a Sci. Fa. Sur Municipal Lien. Section 7182 of the Municipal Authorities Act (53 P.S.) provides in pertinent part:

Any defendant named in the claim, or any person allowed to intervene and defend thereagainst, may, at any stage of the proceedings, present his petition, under oath or affirmation, setting forth that he has a defense in whole or in part thereto, and of what it consists. . . .

See: Williamsport v. Helmrich Bros., 12 D. & C. 3d 93 (1978), which provides that all defenses may be raised in such a proceeding. From the foregoing authority, we determine that the procedural posture of the case is proper and that a decision by this court is warranted.

Defendant challenges the validity of the joint agreement entered into by the two Authorities which establishes the territory to be served by each Authority. The threshold question is whether or not this claim is an administrative issue which falls within the sole discretion of the negotiating authorities. While we have discovered no case on point, an issue similar to this was resolved in Lakemont Civic Association v. Central Blair County Sanitary Authority, 199 Pa. Superior Ct. 125, 184 A. 2d 301 (1962). In that case, plaintiffs

filed a complaint seeking to prevent defendant Authority from accepting a newly constructed sewer system from the contractor. Plaintiff's complaint averred that if proper wet weather tests were conducted during wet weather, water seepage from the outside would exceed that allowable under the contract. The complaint further challenged the adequacy, safety and reasonableness of defendant Authority's services in accepting the sewer system before the system met the seepage requirements during periods of wet weather. In affirming the lower court's dismissal of plaintiff's complaint, the court stated, "Acceptance or rejection of the sewer system, and enforcement of the terms of the construction contract were essentially matters of internal managerial discretion and were not related to questions of rates or service." Id. at 129, 184 A. 2d at 303. The Lakemont court went on to specifically indicate the shortcomings of plaintiff's complaint as follows:

This is pure speculation and would not justify judicial interference. Moreover, the managerial act of acceptance of the sewer system had no direct relation to the question of the authority's rates or service. Any possible relationship was contingent and remote. We find no merit in appellant's argument that the word 'service' covers the acceptance of the sewer system. . . . On the other hand, for example, *questions as to who shall be abandoned are concerned directly with 'service.'* Id. at 129, 184 A. 2d at 303. (Emphasis supplied.)

In the case at bar, defendant specifically questions the authorities' propriety in determining the question of who shall be served. Consequentially, the allegation of discrimination in determining service area is related to service and entails a via-

ble justiciable issue. Since this question has not heretofore been decided, we must closely examine the statutory sources of an authority's powers.

The Municipal Authorities Act specifically provides every authority created thereunder the power "to make contracts of every name and nature and to execute all instruments necessary or convenient for the carrying on of its business." 53 P.S. §306B.(j). Section 306B.(k) further provides such Authorities, "without limitation of the foregoing . . . [the power] to enter into contracts, leases or other transactions with any . . . Authority."

CFJMA and the Shippensburg Borough Authority exercised these broad powers in negotiating the joint agreement of January 15, 1977. Defendant challenges the propriety in which these powers were exercised.

Beyond the above-mentioned general powers, §306B.(h) grants every Authority with the power "to determine the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the areas served." Case law clearly indicates that one challenging service decisions carries the burden of proof. "The burden of proof that the services of the authority are not adequate, safe and reasonable appears to rest upon the consumers bringing the action in the court of common pleas." Yezioro v. North Fayette County Municipal Authority, 193 Pa. Superior Ct. 271, 280, 164 A. 2d 129, 134 (1960); See Rankin v. Chester Municipal Authority, 165 Pa. Superior Ct. 438, 68 A. 2d 458 (1949).

Under the facts presented in the case at bar, we feel that defendant Rhinehart has failed to carry his burden of proving discrimination. Negotiations between two competing authorities inherently involve give and take. The final arrangement be-

tween CFJMA and the Borough Authority was an example of such give and take; the result of which was not an unreasonable allocation of service areas. At trial, the professional engineer representing CFJMA during negotiations (William L. Arrowood) indicated that during the early stages of negotiations all out-of-borough customers were to be transferred to CFJMA with the exception of SSC. After lengthy negotiations, this exclusion was extended to include CPA partially because CPA and SSC had written agreements with the Borough and Borough Authority for sewage disposal. "The issue of service to College Park Apartments became a matter of contention between the negotiating parties." It is worth noting that sometime during 1980, CPA voluntarily decided to put itself under CFJMA control, and has been a CFJMA customer since that time.

Additionally, the Municipal Authorities Act provides the following, "The purpose and intent of this act being to benefit the people of the Commonwealth, by, among other things, increasing their commerce, health, safety and prosperity. . . . " 53 P.S. §306A. To carry out this purpose, adjacent Authorities must be provided the flexibility to negotiate and resolve disputes in the best interests of the area residents.

Under the present arrangement, defendant Rhinehart is receiving the same efficient service as he has in the past. His rates are higher than before, but the same is true of all CFJMA customers who were formerly serviced by the Borough Authority. No evidence was introduced to show that an inclusion of CPA and/or SSC under CFJMA control would alter the $20.50/per dwelling unit uniformly charged by CFJMA throughout its entire territory. Since CFJMA buys its needed capacity in the Bor-

ough Authority's sewage treatment plant, inclusion of SSC in the CFJMA system would require CFJMA to purchase greater capacity at a greater expense. No evidence indicates that this increased cost would be consumed by the number of increased customers in such a manner as to lower the per dwelling unit rate. The outcome of one result is just as probable as the outcome of the other.

For the above-stated reasons, plaintiff Authority's municipal lien is valid and payable.

### ORDER

And now, December 18, 1981, the affidavit of defense is dismissed and the lien filed by plaintiff is sustained.