## City of Philadelphia v. Yellow Cab Company

*Martin Weinberg,* City Solicitor, for plaintiffs.
*Bernard J. Smolens,* for defendants.

WEINROTT, J., August 16, 1973.—The present controversy before the court is whether or not defendants are in compliance with the obligations imposed on them by having been granted certificates of convenience and necessity to operate taxicabs and cabulances within the City of Philadelphia and its environs.

On May 8, 1973, a labor contract between defendants and the driver members of Taxicab Drivers Local

No. 156 expired, and since that time defendants have ceased to provide cab service.

We enter the following

## FINDINGS OF FACT

1. Plaintiff, City of Philadelphia (hereinafter "city"), is a city of the first class organized and existing under the laws of the Commonwealth of Pennsylvania.

2. Plaintiff, Frank L. Rizzo, Mayor, is the duly elected chief executive officer of the city, charged with the duty of protecting the safety, health and welfare of the approximately 2,000,000 people who live in Philadelphia, and many additional millions who work in and visit the city.

3. Defendant, Yellow Cab Company, Inc. (hereinafter "Yellow Cab"), is a corporation and public utility company organized and existing under the laws of the Commonwealth of Pennsylvania for the purpose of providing uninterrupted public transit service in and about the city, pursuant to certificates of convenience and necessity issued by the Public Utility Commission of the Commonwealth of Pennsylvania.

4. Defendant, Yellow Limousine Service, Inc. (hereinafter "Yellow Limousine"), is a corporation and public utility company organized and existing under the laws of the Commonwealth of Pennsylvania for the purpose of providing uninterrupted public transit service in and about the city, pursuant to certificates of convenience and necessity issued by the Public Utility Commission of the Commonwealth of Pennsylvania. In addition, defendant Yellow Limousine also operates a public ambulance service known as "cabulance."

5. Defendant, Jerry Wolman, is the sole owner of the common stock of defendants, Yellow Cab and Yellow Limousine.

6. Defendant, Philadelphia National Bank, holds a security interest in defendants, Yellow Cab and Yellow Limousine, and will retain such security interest until all certain notes are paid in connection with the acquisition of the common stock of Yellow Cab and Yellow Limousine by defendant Wolman.

7. Defendants, Howard Butcher, 3rd, W. W. Keen Butcher, Alfred Blasband, Bernard G. Segal, Jerry Wolman and Paul Levine, are directors of defendant corporations, Yellow Cab and Yellow Limousine.

8. Defendants, Milton A. Eisenberg, Louis Porretti and S. Jay Cooke, are the president, vice president and secretary, respectively, of the corporate defendants.

9. The public transportation services provided by defendants are necessary and essential to the health, safety, welfare and economic security of the city, its inhabitants, its businesses, its industries and its visitors.

10. On or about May 8, 1973, the operations and services to the public of defendants, Yellow Cab, Yellow Limousine and cabulance, ceased and were suspended by reason of the expiration of the existing contract with Taxicab Drivers' Union Local 156.

11. There has been a continuous interruption in Yellow Cab service in Philadelphia from May 8, 1973, to the date of hearing, August 15, 1973.

12. The granting to defendant Yellow Cab by the Public Utility Commission of its certificates of convenience is a declaration that a need exists in Philadelphia for adequate cab service to serve the needs of the public, and proper and continuous service is vital for the proper operation of the city.

13. The daily number of cabs provided by Yellow Cab is approximately 850.

14. Under the Public Utility Code of May 28, 1937, P. L. 1053, art. IV, sec. 403, 66 PS §1173, defendants

are required to render services which shall be reasonable and continuous and without unreasonable interruptions or delay.

15. The mere absence of 850 plus cabs on a daily basis for a prolonged, uninterrupted period of 13 weeks in the city is sufficient to find irreparable harm.

## DISCUSSION

Defendants have filed preliminary objections attacking the jurisdiction of this court.

In addition, defendant, Philadelphia National Bank, has filed a motion to dismiss as to them in that they are not a necessary party. We note that before hearing this matter, defendant bank was the moving party in the United States District Court on a petition for removal. That was denied and the case remanded to this court for adjudication. Furthermore, for all intents and purposes, defendant bank is the owner of all the common stock of defendant Yellow Cab and exercises all incidents of ownership with respect thereto. In any event, they have shown no prejudice to them, and we believe that since they have the right to exercise the voting rights of the stock for all purposes, that they are properly made a party.

The matter of jurisdiction must be considered.

The Public Utility Code of May 28, 1937, P. L. 1053, sec. 917, 66 PS §1357, recognizes the cumulative nature of its provisions and specifically preserves existing rights of action and remedies in equity.

Accordingly, the code, supra, provides, inter alia, 66 PS §1357, as follows:

"Effect on existing liabilities and rights of action

"*Except as otherwise expressly provided, none of the powers or duties conferred or imposed by this act upon the commission,* and none of the regulations, orders, certificates, permits, or licenses made, regis-

tered, or issued by the commission, and none of the duties, powers, or limitations of the powers conferred or imposed by this act upon public utilities, contract carriers by motor vehicle, or brokers, or the performance or exercise thereof, *shall be construed in anywise to abridge or impair any of the obligations, duties, or liabilities of any public utility,* contract carrier by motor vehicle, or broker in equity or *under the existing common or statutory law of the Commonwealth;* but all such obligations, duties, and liabilities shall be and remain as heretofore. *And except as otherwise provided, nothing in this act contained shall in any way abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of the Commonwelath, it being the intention that the provisions of this act shall be cumulative and in addition to such rights of action and remedies":* May 28, 1937, P. L. 1053, art. IX, §917. (Italics supplied.)

The court in Rogoff v. The Buncher Company, 395 Pa. 477, discussed the concurrent jurisdiction of the Pennsylvania Public Utility Commission, and recognized that at page 482 that:

"Both equity and the Commission have jurisdiction in their own fields. The situation is like a public road to whose center the adjoining properties extend, with rights in the owners subject to the public's right of way. As this Court said in Reading & Southwestern Street Railway Co. v. Reading Street Railway Co., supra (361 Pa. 647, 66 A.2d 260); quoted in Reading and Southwestern St. Ry. Co. v. Pennsylvania P.U.C., 168 Pa. Superior Ct. 61, 77 A.2d 102 (1950): 'An unseemly clash of jurisdiction is not to be anticipated; on the contrary, the two tribunals [the equity court and the Public Utility Commission] will act harmoniously, each within the limits prescribed for its action.'

"The Public Utility Law expressly says that the rights it gives shall be cumulative and concurrent. In Art. IX, §917 of the Act; 66 P.S. §1357, it is provided: 'Except as otherwise expressly provided, none of the powers or duties conferred or imposed by this act upon the commission . . . shall be construed to abridge or impair any of the obligations, duties or liabilities of any public utility. . . . And except as otherwise provided, nothing in this act contained shall in any way abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of the Commonwealth, it being the intention that the provisions of this act shall be cumulative and in addition to such rights of action and remedies.' "

The conclusion that the PUC is not vested with exclusive jurisdiction may also be made by examining other provisions of the code.

Section 1391 of Title 66 PS provides:

"The commission, or any person, corporation or municipal corporation having an interest in the subject matter, or any public utility concerned, *may* complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission. Any public utility, or other person, or corporation, subject to this act, likewise *may* complain of any regulation or order of the commission, which the complainant is or has been required by the commission to observe or carry into effect. The commission, by regulation, may prescribe the form of complaints filed under this section": May 28, 1937, P. L. 1053, art. X, §1001. (Italics supplied.)

We note that that section is couched in discretionary terms in that the complaining party *may* complain

in writing to the commission. That certainly is not a mandate that any such complaint *must* or *shall* in the first instance be filed before the Public Utility Commission.

That the Public Utility Commission does not have *exclusive* jurisdiction in this particular case, and that this court has at least concurrent jurisdiction is also derived from an examination of section 1343 of Title 66:

"Whenever the commission shall be of opinion that any person or corporation . . . is violating, . . . any provisions of this act; . . . or any final judgment, *order, or decree made by any court,* then and in every such case the commission may institute in the court of common pleas of Dauphin County,* injunction, mandamus, or other appropriate legal proceedings, to restrain such violations of the provisions of this act."

An examination of this section would certainly indicate that in appropriate circumstances, "any court" may enter final order, and upon violation thereof by the offending utility, the jurisdiction of the commission might also attach for enforcement purposes, including, but not limited to revocation of the certificate of convenience.

If exclusive jurisdiction were to be vested in the Public Utility Commission, no purpose could be served by the insertion of the language above set forth.

We are reinforced in our opinion by 66 PS §1347, entitled, "Adherence to regulations and orders of commissions *and courts*":

"Every public utility, its officers, agents, and employes, and every other person or corporation subject to the provisions of this act, affected by or

---

\* Amended by ACJA to read "Commonwealth Court."

subject to any regulations or orders of the commission, or *of any court,* made, issued, or entered under the provisions of this act, shall observe, obey, and comply with such regulations or orders, and the terms and conditions thereof, so long as the same shall remain in force": May 28, 1937, P. L. 1053, art. IX, §907. (Italics supplied.)

Having quoted all of the sections of the act above set forth, we cannot conclude that in this case only the PUC has initial jurisdiction. We hold, therefore, that there is at least concurrent jurisdiction.

Defendants have argued that the Labor Management Relations Act of 1947 has preempted this field and that the Pennsylvania Anti-Injunction Act prohibits the relief sought. We need not consider those arguments, since we view this matter not as a labor dispute but merly an adjudication of whether or not there is compliance with the certificates issued by the Public Utility Commission in providing continuous and adequate service to the City of Philadelphia, its residents and visitors.

Furthermore, the matter before this court is not a labor dispute and we do not consider it so for the additional reason that neither the union nor its members are parties.

Similarly, we note that we cannot compel the union, even if it were a party, nor the present defendants to sit and bargain collectively, nor can we make a contract for them: Tate v. P.T.C., 410 Pa. 490.

We view that matter and the matter presently before us, however, as two separate and distinct problems.

We find that the 13-week plus delay an unreasonable one, regardless of fault. Our function is not to adjudicate who, if anyone, is at fault for its cause. We only find that the delay is unreasonable and has rendered

cab service in the Philadelphia area inadequate under the certificates of convenience granted by the PUC.

We, therefore, find it within our power to order defendants to comply with their certificates of convenience and necessity, and to make such arrangements to cause their cabs to be put in service, and that those arrangements commence forthwith.

As to the cabs that need no maintenance, the order we enter is to take effect within six days. As to those vehicles which need maintenance, the order to cause maintenance to be made commences forthwith with the result that those cabs must be in service by 8 a.m., August, 24, 1973.

Consequently, we enter the following

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and over the parties.

2. Plaintiffs have no adequate remedy at law.

3. The 13-week plus delay is unreasonable and results in inadequate cab service in Philadelphia.

4. Defendants are in violation of their certificates of convenience and necessity.

Since the parties have stipulated that this may be considered as on final hearing, we hereby enter the following

## FINAL DECREE

And now, to wit, August 16, 1973, it is ordered, adjudged and decreed as follows:

1. Defendants are compelled to put into service by 8 a.m., August 23, 1973, those cabs which need no maintenance;

2. Defendants are compelled to cause maintenance and repairs to be made forthwith to those cabs requiring same, said maintenance to be completed

by 8 a.m., August 24, 1973, when said cabs must be put in service;

3. Defendants are compelled to comply with their certificates of convenience and necessity and provide adequate and continuous service within the limits prescribed thereby.

The prothonotary is ordered to notify all parties or their attorneys of the date of filing of this decree.