Grays Ferry Warehousing & Leasing Co. *v.* City of Philadelphia, Commonwealth of Pennsylvania, Department of Transportation, David J. Damiano, Buckley & Co., Inc. City of Philadelphia, Appellant.

Argued April 2, 1975, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Edward Benoff,* Assistant City Solicitor, with him *Theodore H. Lunine,* Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellant, City.

*Louis J. Presenza,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant, Commonwealth.

*LeRoy Comanor,* for appellant, Buckley & Company, Inc.

*Samuel P. Lavine,* with him *Carl T. Bogus,* and *Steinberg, Greenstein, Gorelick & Price,* for appellee.

OPINION BY JUDGE MENCER, July 1, 1975:

This is an appeal by the City of Philadelphia (City) from a final decree of the Court of Common Pleas of Philadelphia County dismissing the City's exceptions to its decree nisi and ordering that the City (1) be enjoined from using a certain cobblestone road located on the property of the Grays Ferry Warehousing and Leasing Company (appellee), (2) restore the cobblestone road to the condition it was in on December 31, 1972, and (3) pay damages to the appellee in the amount of $44,650.

This case began with the construction of the new Grays Ferry Avenue Bridge in Philadelphia. Since the bridge was to be built above the grade of the tracks of the Penn Central Company and the Philadelphia, Baltimore and Washington Railroad Company, the exclusive power to appropriate property for its construction was vested in the Pennsylvania Public Utility Commission (Commission) by virtue of Section 409 of the Public Utility Law.[1] The Commission exercised its power under this section on September 28, 1970, when, upon application of the City, it entered an order taking and appropriating two parcels of appellee's property which adjoined the construction site.

Construction began on the project on or about January 2, 1973. On March 16, 1973, the appellee filed a complaint in equity seeking relief against the City's use of a cobblestone road which, it was alleged, was the property of the appellee and had not been appropriated by the Commission's order of September 28, 1970. The appellee

---

1. Act of May 28, 1937, P. L. 1053, *as amended,* 66 P.S. §1179 (Supp. 1974-75).

also alleged that it owned a multistory commercial building located on its property adjoining the bridge site and that this building was occupied by tenants who required ingress and egress by and through the said cobblestone road. The appellee further alleged that, because of the City's actions and the actions of the City's contractor, Buckley & Company, Inc. (Buckley) and other subcontractors, the appellee and its tenants were deprived of the use of the cobblestone road.[2]

The case was tried before the Honorable Leo Weinrott, who subsequently issued a decree nisi enjoining the City and Buckley from denying appellee full use and enjoyment of the cobblestone road, ordering the City to restore the cobblestone road to the condition it was in on December 31, 1972, and awarding damages to appellee against the City in the amount of $44,650. After the City's exceptions to the decree nisi were dismissed, a final decree was entered. The City has now appealed to us from this decree.

The City first argues that the lower court lacked equitable jurisdiction in this case because an adequate and exclusive remedy was provided by two statutes.[3] Although these two statutes clearly give the City the power to take property for the construction of bridges and provide a remedy for property owners whose lands have been appropriated, they are not applicable to situations like the present one since, as mentioned earlier in this opinion, Section 409 of the Public Utility Law gives the Commission the *exclusive* power to appropriate property for the

---

2. Appellee's complaint contained a second count sounding in negligence. The lower court apparently found against appellee on this count since it failed to mention it in its opinion and decree and afforded appellee relief only on the first count sounding in trespass. Appellee did not appeal from this action by the lower court, and the second count is therefore not before us.

3. The Act of May 16, 1891, P. L. 75, §1, *as amended,* 53 P.S. 1081, and the Act of May 26, 1893, P. L. 139, §1, 53 P.S. §2551.

construction of bridges *crossing public utilities*. Any contradiction arising from a reading of these statutes must be resolved in favor of Section 409 of the Public Utility Law's prevailing over the former statutes since Section 3 of the Statutory Construction Act of 1972, *added* by the Act of December 6, 1972, P.L. 1339, 1 Pa. C.S. §1936, provides that "[w]henever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail."

We also hold that the Eminent Domain Code[4] does not provide an exclusive procedure to be used by appellee because Section 303, 26 P.S. §1—303 (Supp. 1974-75), specifically states that "nothing in this act shall be deemed to affect, vary, alter or modify the jurisdiction or power of the Public Utility Commission. . . ."

The above review of the applicable statutes compels the conclusion that the provisions of the Public Utility Law mandate the remedies available to appellee for the taking of his property. Although Section 411 of the Public Utility Law, 66 P.S. §1181 (Supp. 1974-75), provides a remedy for owners of adjacent property whose lands have been taken, injured, or destroyed in the construction of a crossing, this remedy is not exclusive. Section 917 of the Public Utility Law, 66 P.S. §1357, provides in pertinent part:

> "And except as otherwise provided, nothing in this act contained shall in any way abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of the Commonwealth, it being the intention that the provisions of this act shall be cumulative and in addition to such rights of action and remedies."

We must conclude that the lower court did, indeed, have equitable jurisdiction.

---

4. Act of June 22, 1964, Special Sess., P. L. 84, *as amended*, 26 P.S. §1—101 et seq.

The City's second argument is that the lower court's award of damages was contrary to the evidence. We do not agree. While our careful reading of the record reveals that there was a conflict in testimony between the City's expert witness and the appellee's expert witness, the lower court's award of damages was adequately supported by the testimony of the latter. It was within the province of the lower court to decide the credibility of the witnesses, and the City cannot complain that the Court should have accepted the testimony of its expert rather than that of the appellee.

The City's third argument is that it is immune from any liability for damages for its use of the cobblestone road because it had an easement to use this road. While we agree that the City did have an easement to use the road, we must also agree with the lower court that the City's use of the road was in excess of any easement rights it possessed.

The testimony clearly showed that City employees had used the road continuously for access to the City's land beneath the bridge and for maintenance of the bridge for a period in excess of twenty-one years. There was also a reservation in the deed to appellee's property which gave the City, as an adjoining landowner, an easement over the road. The City, however, exceeded the scope of its easement. In fact, it closed the road, as indicated in the following letter addressed to appellee:

"January 19, 1973

"Mr. Morris Stein
Grays Ferry Warehousing & Leasing
3651 Grays Ferry Avenue
Philadelphia, Pa. 19146

Re: Grays Ferry Avenue Bridge over the Schuyl-kill River

Dear Mr. Stein:

In view of the fact that the properties located at the lower level of Grays Ferry Avenue are vacant and the possibility of parties engaging in short dumping

in the bed of Grays Ferry Avenue under the bridge, the general use ramp leading from Grays Ferry Avenue to the lower level in front of your property will be closed temporarily by the Streets Department. A sign advising the public of this will be conspicuously posted in the area.

The ramp will continue to be open for your needs and those of any other approved parties requiring access to the lower level. The contractor, Buckley & Company, and all approved subcontractors will also be permitted to use the ramp in connection with the construction of the new bridge.

A key to the locks on the barrier at the top of the ramp will be available to the guard you have stationed at the site for your use during the periods when the contractor is not working and the ramp is physically barricaded.

After completion of construction, approximately two years from now, the need for this temporary ramp closure will be reviewed on a periodic basis to determine whether it shall be reopened once again and revert back to its former status existing prior to the fall of 1972.

We appreciate your cooperation and assistance in this matter, and you may rest assured that we propose to complete the construction of the bridge and the improvement of Grays Ferry Avenue with a minimum of inconvenience to the abutting owners on Grays Ferry Avenue.

> Very truly yours,
> David J. Damiano
> Commissioner"

Moreover, the appellee's testimony indicated that the City's use of the road excluded appellee's use for an average of between two and five hours a day and that the road was barricaded from 4 p.m. to 8 a.m. each day. Various photographic exhibits admitted at the trial reinforced

appellee's testimony on this point. We find that the use of the road by the City exceeded any right of easement the City possessed in the road and became a continuing trespass. *See Rogoff v. The Buncher Company*, 395 Pa. 477, 151 A.2d 83 (1959).

The City's fourth argument is that the trial judge erred in viewing the property in question without providing the City's counsel an opportunity to be present. Our reading of the record reveals that counsel did not object to the Court's view even though he was informed of the Court's intention to view the road prior to the view. We will therefore not consider this objection by the City.

The City's final argument is that the lower court erred in entering judgment against the City only and not against the other defendants, the Commonwealth of Pennsylvania and Buckley. We find that the record supports the lower court's action in finding that the City alone was liable for the damages caused to appellee's property.

Final decree modified to the extent that the City of Philadelphia and Buckley and Company shall not block or deny appellee use of the Cobblestone Road and all parties shall have the right of ingress, egress and regress in the full use and enjoyment thereof and, as so modified, final decree affirmed.

Judge CRUMLISH, JR. concurs in decision.