Reading & Southwestern Street Railway Co., Appellant, v. Pennsylvania Public Utility Commission et al.

Argued October 5, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Paul H. Rhoads*, with him *Thomas Iaeger Snyder, Snyder, Balmer & Kershner* and *Rhoads & Sinon*, for Reading and Southwestern Street Railway Company, appellant.

*John W. Mentzer,* with him *Thomas M. Kerrigan* and *Charles E. Thomas,* for Pennsylvania Public Utility Commission, appellee.

*Earl G. Harrison,* with him *Wm. A. Schnader, John W. Speicher, John T. Brady* and *Schnader, Harrison, Segal & Lewis,* for intervening appellees.

OPINION BY ARNOLD, J., December 15, 1950:

When the factual situation here involved is simplified and the immaterial matters eliminated, the legal questions seem to be without difficulty.

The Reading and Southwestern Street Railway Company (called Southwestern) owns some 5.5 miles of street railway, extending from Reading to Mohnton, which it rented to the United Traction Company. This lessee later assigned the lease to the Reading Street Railway Company (called Reading). The lease was for a term of 999 years and has approximately 950 years to run.

Reading, in addition to operating a street railway company, acquired the motor bus facilities of the Reading *Coach* Company operating buses between Reading and Lebanon with schedules in both cities. One of the routes of the Reading Coach Company extends from Meyerstown to Palmyra where it meets a bus line of the Hershey Coach Company operated between Hershey and Harrisburg. All the stock of Reading and of the Hershey Coach Company is owned by the Beneficial Corporation[1] of the State of Delaware.

Reading, Reading Coach Company and Hershey Coach Company applied for and obtained certificates of public convenience from the Public Utility Commission, whereby Reading transferred to the Reading Bus

---

[1] Which also owns 40% of the stock of the appellant, Reading and Southwestern Street Railway Company.

Company (a new corporation) all its property and motor bus rights in the Reading area, except property to be retained to operate the Reading-Mohnton street railway lines (the 999 year lease). In consideration thereof Reading Bus Company transferred all its capital stock to Reading. Reading also was permitted to transfer all its property and motor bus rights in the Lebanon area to the Hershey Coach Company for a cash consideration. The motor bus schedules of the old bus companies were consolidated so that there was direct transportation between Reading and Harrisburg via Hershey.

Southwestern appeals from these orders and contends (a) that Reading would be stripped of valuable assets so that in the future it would not be able to operate the Reading-Mohnton street railway of which Reading is the successor lessee; (b) that, by removal of assets from this jurisdiction, a fraud is committed upon it as a future creditor of Reading, since the orders of the Commission may make it impossible to collect the rental payments under the lease; and (c) that the *Public Utility Commission* should sequester the assets of Reading for 950 years (the balance of the term of the lease).

While the present litigation was before the Commission, Southwestern, the present appellant, filed a bill in equity in the courts of Berks County. This bill set forth all the allegations which Southwestern made before the Public Utility Commission. To this bill in equity Reading filed jurisdictional objections under the Act of 1925, P. L. 23, 12 P.S. §672 et seq., on the ground that the Public Utility Commission had complete jurisdiction in the premises. Upon the refusal of the equity court so to rule, Reading took an appeal to our Supreme Court: *Reading and Southwestern Street Railway Company v. Reading Street Railway Company,* 361 Pa. 647, 66 A. 2d 260. The Supreme Court held:

"An unseemly clash of jurisdiction is not to be anticipated; on the contrary, the two tribunals [the equity court and the Public Utility Commission] will act harmoniously, each within the limits prescribed for its action."

The Public Utility Commission has no jurisdiction to adjudicate purely private rights and its duty is to determine the public interest: *Northern Pennsylvania Power Company et al. v. Pennsylvania Public Utility Commission,* 333 Pa. 265, 5 A. 2d 133; *Penn-Harris Hotel Company v. Pennsylvania Public Utility Commission,* 166 Pa. Superior Ct. 394, 71 A. 2d 853. It is therefore obvious that the so-called fraud element raised by the present appellant must be determined in the equity proceeding pending in Berks County.

The present record shows no insufficiency of evidence to sustain the finding of the Commission that the *public* is not adversely affected by the present orders of the Commission; nor to sustain the findings of the Commission that the public interest is promoted by the granting of the application.

Since there is ample evidence to sustain the orders of the Commission, a prolongation of this opinion is useless, for the contention of the appellant is cognizable only in the pending action in the equity court.

Orders affirmed and supersedeas dissolved.