7 Pa. Commonwealth Ct. 141 (1972)
Northvue Water Company, Inc.
v.
Municipal Water & Sewer Authority of Center Township.
Appeal, No. 1036 C.D. 1971.
Commonwealth Court of Pennsylvania.
Argued October 30, 1972.
December 20, 1972.
Argued October 30, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.
*142 Norman D. Jaffe, with him Leo M. Stepanian, for appellant.
Frank P. Krizner, with him Lee C. McCandless and McCandless, Chew and Krizner, for appellee.
OPINION BY JUDGE KRAMER, December 20, 1972:
This is an appeal from an order of the Court of Common Pleas of Butler County, dismissing exceptions filed by the Municipal Water and Sewer Authority of Center Township (Authority) to a "Decree Nisi" dismissing preliminary objections and ordering the Authority within 45 days of the date of the "Final Decree" to furnish the Northvue Water Company, Inc. (Northvue), a public utility water company, with a statement of the conditions under which the Authority would provide water service to Northvue.
At a time not disclosed in the record, but certainly before September of 1968, the Authority was established by Center Township (Township) for the purpose of providing water to the public in that Township. Also at a time not disclosed in the record, but certainly prior to the year 1957, Northvue was organized as a public utility for the purpose of serving residents in a specific plan in the Township. At the time of the hearing (December 4, 1970) in this case there were 99 homes in the plan. Northvue relies upon at least four *143 drilled wells for its water supply. Although the record is not clear as to whether Northvue can meet all of the water requirements of its 99 customers, the record does show that its water supply has been drastically reduced, and some of its water is classified unsatisfactory. Northvue was required by the Pennsylvania Department of Health to find another water supply, and approached the Authority requesting that the Authority supply water to Northvue for service to its customers. The record discloses that an offer was made by the Authority to Northvue for the outright purchase of Northvue's plant. Thereafter, without notice to the Authority, the owners of Northvue sold the company to a Mr. Sporcic who is now the sole owner of Northvue. In any event the negotiations for the purchase of water by Northvue from the Authority collapsed, and thereafter Northvue filed a complaint in the lower court, in equity, requesting preliminary, and thereafter final, mandatory injunctions directing the Authority to supply the "necessary water" at reasonable rates to be fixed by the lower court. Northvue in turn proposed to connect its lines to those of the Authority which, according to the record, are between 1,500 and 3,000 feet distance from Northvue's existing lines.
At this point we must highlight certain deficiencies in the record. As must be known to the bar generally, this Court traditionally reviews the entire record in each case very carefully. In this case, following the filing and service of the complaint (on December 1, 1970), the Authority filed preliminary objections on December 3, 1970. On that same date, the court below issued an order setting the matter down for argument on the preliminary objections to be held at 2:30 P.M. on the following day, December 4, 1970. The transcript of what occurred on December 4, 1970 does not mention the argument on the preliminary objections, *144 but rather, merely indicates the taking of the testimony of three witnesses and the introduction of certain exhibits on the merits of the case. At the end of the plaintiff's (Northvue) case, counsel for the Authority made a motion for a nonsuit and a demurrer. The court reserved its decision on the defense motions, and directed the Authority to proceed with its case. At the conclusion of this hearing the court announced that it would "take the entire matter under advisement including all objections, preliminary objections to other motions that were raised," and directed counsel to file briefs. The next thing that appears in the record is an "adjudication" at the end of which the court attached its "Decree Nisi" in effect dismissing preliminary objections and granting, in part, the injunction sought by Northvue.
It is worth noting at this point that the procedural format followed by the lower court presents several potential problems. The characterization of the lower court's decree and the lower court's treatment of appellant's preliminary objections are prime examples. Fortunately, this Court need not determine whether the decree of the court below should be considered a preliminary injunction or a final mandatory injunction, or the propriety of either.[1] However, initially we *145 will comment on the procedural treatment afforded appellant with regard to his preliminary objections.
Without, for the moment, deciding the merits of the Authority's preliminary objections, we note that the Authority raised three issues: (1) lack of jurisdiction; (2) failure to state a cause of action; and (3) failure of the complaint to conform to the law. As previously mentioned, the preliminary objections were filed on December 3, 1970, and the lower court ordered argument on the preliminary objections for the next day, December 4, 1970. The hearing which was held, even if the court believed it necessary to enable it to rule on the preliminary objections, was not limited solely to the preliminary objections, but, rather, was the basis of the trial court's final decree on the merits. In treating this hearing as the basis for the injunction requested rather than on preliminary objections, the court below obviated certain opportunities available to both parties by virtue of Pa. R.C.P. No. 1028. Rule 1028 is applicable to preliminary objections in actions at law, and by virtue of Pa. R.C.P. No. 1501, it is also applicable in equity actions. Rule 1028(c) provides, in part, that the court shall determine preliminary objections *146 promptly. We recognize that when there are considerable questions of fact germane to the entire proceedings which are necessary in order to rule on certain preliminary objections it is permissible to defer a decision on the preliminary objections until a hearing on the merits of the entire matter. See Goldman v. Schlanger, 49 Pa. D. & C. 2d 225 (1970); see also 2A Anderson, Pa. Civil Practice, p. 522. However, when the issues raised are questions of law, not fact, as in the case before us, the preliminary objections should be determined promptly without evidentiary hearing. Cf. 10 Anderson, Pa. Civil Practice, p. 196; 8 Standard Pa. Practice, p. 186, § 170 n. 7. Also see Hay v. Hillegass, 275 Pa. 497, 119 A. 588 (1923), cert. denied, Hillegass v. Rohm, 262 U.S. 758 (1923), where the court held that questions raising lack of jurisdiction should be decided preliminarily.
Under the rules, when preliminary objections are overruled, the defendant is permitted to file his answer to the complaint as provided for in Rule 1028(d). See Flannery v. Giebus (No. 2), 38 Pa. D. & C. 2d 770 (1965), where the court held that the right to file an answer is absolute. In this case the defendant (Authority) was never given the opportunity to file an answer.
It is also worth noting that lower court rulings on preliminary objections are normally interlocutory, and therefore are not appealable. However, the Act of March 5, 1925, P.L. 23, Section 1, 12 P.S. § 672, provides that where a question of jurisdiction over the cause of action is raised in preliminary objections, the ruling of the court may be appealed provided there is a question of jurisdiction and not merely a question concerning the form of action. See Allegheny Contracting Industries, Inc. v. Flaherty, 6 Pa. Commonwealth Ct. 164, 293 A. 2d 639 (1972).
*147 In any event, in this case the jurisdiction question was properly raised as an exception to the lower court decree. The case law leaves no doubt, absent a finding of irreparable harm, that if Authority's allegation is correct (i.e., that an adequate statutory remedy exists under the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, as amended, 53 P.S. § 301 et seq.), it controls, and the lower court could not invoke equity jurisdiction. As our Supreme Court said in West Homestead Borough School District v. Allegheny County Board of School Directors, 440 Pa. 113, 269 A. 2d 904 (1970): "[I]f the legislature provides a specific, exclusive constitutionally adequate method for the disposition of a particular kind of dispute, no action may be brought in any `side' of the Common Pleas to adjudicate the dispute by any kind of `common law' form of action other than the exclusive statutory method. This excludes an action for injunction, or other equitable form of relief, unless the statute provides for it or unless there is some irreparable harm that will follow if the statutory procedure is followed." (Emphasis in original.) 440 Pa. at 118, 269 A. 2d at 907. See also Calabrese v. Collier Township Municipal Authority, 430 Pa. 289, 240 A. 2d 544 (1968) and Balazick v. Dunkard-Bobtown Municipal Authority, 414 Pa. 182, 199 A. 2d 430 (1964).
Northvue raised an allegation of irreparable harm, but the lower court never found as a finding of fact or conclusion of law that such condition exists. To the contrary, the record indicates that Northvue still has an undetermined amount of good water available. Consequently, the primary issue remaining before this Court is whether the Municipality Authorities Act is applicable under the present fact situation.
Section 4 of the Act, 53 P.S. § 306, provides, in part:
"B. Every authority is hereby granted, and shall have and may exercise all powers necessary or convenient *148 for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers: . . .
"(h) To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties, . . . and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the areas served. . . . Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of the county wherein the project is located. . . . The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service." (Emphasis added.) In the case of Yezioro v. North Fayette County Municipal Authority, 193 Pa. Superior Ct. 271, 164 A. 2d 129 (1960), our Superior Court stated that the word "service" found in the above-quoted section of the statute should be liberally construed, so that an authority can carry out its proprietary function of rendering adequate, safe and reasonable service to the consuming public. In that case, the abandonment of service was included within the statutory term "service." In Lakemont Civil Association, Inc. v. Central Blair Association Sanitary Authority, 199 Pa. Superior Ct. 125, 129, 184 A. 2d 301, 303 (1962), the court stated: "[Q]uestions as to who shall be served and what lines shall be abandoned are concerned directly with `service'." (Emphasis added.) In light of the foregoing *149 observations, we conclude that the request for an extension of service within Center Township, which is within the franchised service area of the Authority, comes within the meaning of the statutory word "service" as it appears in Section 306.
Having thus concluded that the request for service made by Northvue in this case comes within the statutory intent, the appellate court decisions make it very clear that any party desiring a court ruling or determination of service by such an authority must follow the "exclusive" jurisdiction of the common pleas court provided for in the statute. Having determined that the statutory appeal is the exclusive route, a lawsuit brought in equity, not included in the statute, cannot stand, there being an adequate statutory remedy at law. See Calabrese v. Collier Township Municipal Authority, supra; West Homestead Borough School District v. Allegheny County Board of School Directors, supra, Balazick v. Dunkard-Bobtown Municipal Authority, supra.
Regretfully, due to the present status of the record before us, we are unable to rule on the merits of the case presented by Northvue. It is indeed unfortunate that the 99 customers of Northvue have been held in a perilous condition of anxiety in not knowing whether they will be permitted to receive water from their public utility supplier through the more convenient and less expensive point of connection with the Authority, or whether their supplier may be forced to construct a much longer and more expensive supply line to the Butler Water Company (which apparently supplies all of the Authority's water for its customers). We are chagrined that we are not in a position to solve this very important problem by a final determination, but we are helpless to resolve issues which are not properly brought before us.
*150 Based upon the above discussion, the "Final Decree" dated October 19, 1971, and the "Decree Nisi" dated January 14, 1971, are reversed, and the complaint of Northvue in equity is dismissed.
NOTES
[1] The difficulty with the lower court's decrees lies in the failure of the court to dispose of the issues presented in proper sequence. This Court is at a loss to ascertain whether the court below was granting the preliminary injunction sought by Northvue, or having refused the request for a preliminary injunction, was granting a final mandatory injunction. In any event, the stretching by the lower court of the argument ordered to be held on preliminary objections presents serious procedural problems, which although not dispositive in this case, we feel compelled to mention.

If the hearing held was intended for disposition of a preliminary injunction (which the court's order fails to disclose), the overall merits of the matter need not to be conclusively determined, but it is crucial that imminent irreparable harm be shown. See Slott v. Plastic Fabricators, Inc., 402 Pa. 433, 167 A. 2d 306 (1961). In the case before this Court, the trial court never made a finding of imminent irreparable harm. Furthermore, mandatory preliminary injunctions should be granted only in extreme cases, which the record fails to support.
If the lower court intended its "Final Decree" to be a final mandatory injunction, it would have been necessary to rule on the preliminary injunctions first, and designate a hearing for final injunction. It is improper to treat a hearing on application for a preliminary injunction as a final hearing on the merits and basis for a final decree unless so stipulated by the parties. See Gross v. Wieand, 151 Pa. 639, 25 A. 50 (1892) and Drum v. Dinkelacker, 262 Pa. 392, 105 A. 509 (1918).