366 A.2d 270

David L. LEVETO and Anthony M. Mancuso

v.

NATIONAL FUEL GAS DISTRIBUTION
CORPORATION, Appellant.

Gregory A. KASEMER and Patrick G. Kase-
mer, a co-partnership d/b/a
Fountain House Park

v.

NATIONAL FUEL GAS DISTRIBUTION
CORPORATION, Appellant.

NATIONAL FUEL GAS DISTRIBUTION
COMPANY, Appellant,

v.

The PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 12, 1975.

Decided Nov. 22, 1976.

512

Norman H. Stark, MacDonald, Illig, Jones & Britton, Erie, for appellant.

Robert S. Bailey, Thomas, Shafer, Walker, Dornhaffer & Swick, Meadville, for appellees.

Frank B. Wilmarth, Barnett Satinsky, Asst. Counsel, Edward J. Morris, Counsel, Penna. Public Utility Commission, Harrisburg, for intervenor in Nos. 56 and 57.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This appeal questions the jurisdiction of a court of common pleas to issue an injunction against a utility company regulated by the Pennsylvania Public Utility Commission (PUC).

A PUC investigation of natural gas supplies resulted in an order to all gas service companies in February of 1972 providing, in pertinent part, that any company projecting a peak demand greater than peak supply was "prohibited from entering into any contract for serving

gas . . . ." This order was not immediately effective as to appellant National Fuel Gas (NFG), a natural gas service company, because it did not project a peak demand in excess of its peak supply.

During 1973 and 1974, appellees, who are real estate developers, were separately developing a mobile home park and a residential subdivision, and were given assurances by NFG, appellant, that it would supply natural gas to their developments. However, in December, 1974, NFG was notified of curtailments of gas supply by its suppliers; and, in January of 1974, NFG determined that the PUC order of February, 1972 now applied. Subsequently, NFG announced that no new service connections would be made after April 1, 1975.[1] Appellees, in the process of erecting new mobile and residential homes, separately filed complaints in equity with the Court of Common Pleas of Crawford County, praying that NFG be enjoined from denying them service to these new homes. NFG filed preliminary objections in each case, contending that the court was without jurisdiction, and alleging that jurisdiction was vested in the PUC. These preliminary objections were denied and, after full hearing by the lower court, orders were entered on May 27 and June 6, 1975 directing NFG to supply gas to appellees. No appeal was taken from these orders.

On July 23, 1975 the PUC issued an order to NFG which, in essence, directed it not to comply with the or-

1. However, it should be noted that NFG notified the PUC by letter dated January 17, 1975 that it had projected that its peak supplies might equal its peak demand because of the expected curtailment by its suppliers. The letter stated that "commencing January 20, 1975 we will no longer provide gas service to new customers . . . *unless the customer has already applied for service or received a commitment from the Company.*" [Emphasis added.] The letter was approved by the PUC and became part of NFG's tariff. Appellees were the acknowledged recipients of such commitments which, at least initially, the PUC and NFG determined to be unaffected by the "peak supply-peak demand" order.

ders of the lower court. Accordingly, NFG notified appellees that no service connections would be made despite the court's orders. Two contempt orders were then issued by the court against NFG on August 12, 1975 from which NFG and the PUC, as intervenor, now appeal.

Appellants do not challenge the finding that NFG violated the orders, but rather they attack the validity of the orders and the jurisdiction of the court which issued them. If any point of law is well settled, it is that jurisdiction over the subject matter is fundamental to a court's authority to act. *Mintz v. Mintz,* 83 Pa. Super. 85 (1924); 20 *Am.Jur.2d,* Courts §§ 87, 93 (1965). Appellees' contention that appellants press this point too late has no merit. Except as will be discussed below, objection to the jurisdiction of a court over the subject matter can never be lost by waiver, estoppel or consent and may be raised at any stage of the proceedings or by collateral attack. *Drummond v. Drummond,* 414 Pa. 548, 200 A.2d 887 (1964); *Brenner v. Sukenik,* 410 Pa. 324, 189 A.2d 246 (1963); *Mintz v. Mintz,* supra; see 9 *Standard Pa. Practice,* Ch. 40, § 48 (rev.ed. 1962); 10 *P.L.E.,* Courts § 22 (1970). Lack of jurisdiction over the matter in which any order is entered is a defense in any subsequent contempt proceeding for violation of the order. As we recently stated in *Roviello v. Roviello,* 229 Pa.Super. 428, 323 A.2d 766 (1974):

"[T]he court's power to punish for contempt is limited to situations in which it has both the jurisdiction and the power or authority to render the particular decree or order. . . . In those instances where a court enters an order without authority or legal right to make such an order, it is powerless to attempt its enforcement." *Id.* at 439, 323 A.2d at 770. [Citations omitted.]

Appellant NFG also seeks review of the equity adjudications on their merits. Since no appeal was tak-

en from the decrees within the thirty days provided by the Act of July 31, 1970, P.L. 673, § 502(a), 17 P.S. § 211.502(a), the matter is foreclosed. Failure to comply with the statute strips this court of jurisdiction to hear and decide the appeal. In *Department of Transp. v. Brougher*, 5 Pa.Cmwlth. 531, 291 A.2d 811 (1972), it was held that where an act of assembly fixes the time within which an appeal must be taken, the time may not be extended in the absence of fraud or its equivalent. *Luckenbach v. Luckenbach*, 443 Pa. 417, 281 A.2d 169 (1971); *Washington Mall v. Board for Assessment and Revision of Taxes*, 4 Pa.Cmwlth. 251, 285 A.2d 885 (1971). No such circumstances are present here, so that the merits of the two adjudications are beyond review, save as they may bear upon the only question properly before this court; that is, whether the court below had jurisdiction over these cases.

As a general proposition, Pennsylvania courts acting as courts of equity have jurisdiction over "the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals." Acts of June 16, 1836, P.L. 784, § 13, and February 14, 1857, P. L. 39, § 1, 17 P.S. §§ 282–83. This statutory grant embraces the authority to hear and enjoin wrongful breaches of contract where money damages are an inadequate remedy. *Reading & S. W. St. Ry. Co. v. Reading St. Ry. Co.*, 361 Pa. 647, 66 A.2d 260 (1949); *Upholsterer's Int'l Union of N. A. v. United Furniture Workers of America, C.I.O.*, 356 Pa. 469, 52 A.2d 217 (1947). Thus, the court below was clearly authorized to adjudicate this matter unless some specific circumstances ousted the jurisdiction of equity.

Appellants contend that the Public Utility Law, Act of May 28, 1937, P.L. 1053, 66 P.S. § 1101 *et seq.* and the decisions of our courts thereunder vest jurisdiction over this matter exclusively in the PUC. In this regard they

point to Section 1341 of the Act, which grants to the PUC the general power to supervise and regulate public utilities, and to Section 1171 which requires that utility companies' service and facilities conform to the regulations and orders of the PUC. In support of their proposition appellants cite several cases, principally, *Lansdale v. Philadelphia Elec. Co.*, 403 Pa. 647, 170 A.2d 565 (1961). In that case, our Supreme Court ruled that the PUC, not a court of common pleas, had jurisdiction over a territorial dispute between a utility company and a municipality supplying electricity within its boundaries. It was stated therein "that the courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not in the courts." *Id.* at 650, 170 A.2d at 567.

Appellant's argument is at first reading attractive, but it misapprehends the extent of this sound principle. Section 1357 of the Public Utility Law provides in pertinent part:

> "Except as otherwise expressly provided, none of the powers or duties conferred or imposed by this act upon the commission, and none of the regulations, orders, certificates, permits, or licenses made, registered, or issued by the commission, and none of the duties, powers, or limitations of the powers conferred or imposed by this act upon public utilities . . . shall be construed in anywise to abridge or impair any of the obligations, duties, or liabilities of any public utility . . in equity or under the existing common or statutory law of the Commonwealth; but all such obligations, duties, and liabilities shall be and remain as heretofore . . .."

In combination with Section 1391 which permits complaints about the utilities to be filed with the PUC by "any person . . . having an interest in the subject

matter," the Public Utility Law has been construed as creating many areas of concurrent jurisdiction between the courts of the Commonwealth and the PUC. See, e. g., *Rogoff v. Buncher*, 395 Pa. 477, 151 A.2d 83 (1959) ; *Emerald Coal & Coke Co. v. Equitable Gas Co.*, 378 Pa. 591, 107 A.2d 734 (1954); *Grays Ferry Warehousing & Leasing Co. v. City of Philadelphia*, 20 Pa.Cmwlth. 90, 341 A.2d 548 (1975).

The question then is whether the Public Utility Law contains an express provision vesting jurisdiction of the instant genre of litigation exclusively within the PUC.[2] And, "whether a case is ultimately to be decided by equity or by the Commission depends upon its facts." *Rogoff v. Buncher*, 395 Pa. at 484, 151 A.2d at 87.

 In this context appellants contend that the adjudication of the court below constitutes a regulation of utility service and, as such, is invalid under Section 1171 which requires "service and facilities" to conform to PUC regulation. However, we need not determine what persuasiveness this argument might have since the PUC did not provide regulations which affected the power of NFG to enter contracts at the time the instant agreements were made. The trial court found as a fact, upon ample evidence, that appellees and NFG agreed upon

2. For example, in *Behrend v. Bell Tel. of Pa.*, 431 Pa. 63, 243 A.2d 346, 347 (1968), the Supreme Court held that equity had no jurisdiction over the omission of plaintiffs' names from the telephone directory, because issuing the directory was included in "service" under Section 1171. The Court in *Behrend* stated that "service" as defined in the Public Utility Law "is used . . . in its broadest and most inclusive sense, and includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities . . . in the performance of their *duties under this act* . . .." [emphasis added.] However, the issuance of a directory was made a duty by the Public Utility Law, whereas the obligation to perform contracts *is a duty* of the utilities regardless of the "service" provision of the Public Utility Law. Hence, *Behrend* is not authority for the proposition that the instant case falls exclusively within the jurisdiction of the PUC.

supplying gas to appellees' real estate developments prior to the date on which the PUC's regulation affected NFG. It is black letter law that a court of law or equity has the power to determine whether the necessary facts prerequisite to the exercise of its jurisdiction are present. 21 *C.J.S.* Courts § 113, p. 174. Since no direct appeal was taken challenging those findings of fact, those are now the facts of the case and their validity may not be challenged herein, despite the impact they have on the court's jurisdictional determination. See generally 21 *C.J.S.* Courts § 115, p. 177. Thus, in the instant case, the court found that the agreement upon which plaintiffs sought relief was a private agreement unaffected by the conditional regulation of the PUC. While it is true that certain aspects of a utility's contracts are specifically regulated by the Public Utility Law, the act does not grant the PUC general supervisory power over contracts. See *Meyers v. Pennsylvania PUC,* 164 Pa.Super. 431, 65 A.2d 256 (1949). Cf. *NAACP, Inc. v. Pennsylvania PUC,* 5 Pa.Cmwlth. 312, 290 A.2d 704 (1972). Since the case at bar involves a private contractual dispute between a citizen and a utility, the PUC is not jurisdictionally empowered to decide it. *Reading & S. W. St. Ry. Co. v. Pennsylvania PUC,* 168 Pa.Super. 61, 77 A.2d 102 (1950). As our Supreme Court found in *Rogoff v. Buncher,* supra, the cause of action "looks both ways": that is, while the relief sought may be characterized as affecting the services of a utility it also, indisputably, sets forth a private claim to enjoin a breach of contract. To the latter extent, at least, a court of equity is a proper forum to adjudicate this cause of action on its merits. *Id.* See *West Penn. Rys. Co. v. Pennsylvania PUC,* 135 Pa.Super. 89, 97–98, 4 A.2d 545 (1938).

■ Appellants also rely upon Section 1441 which requires that "no injunction shall issue modifying, suspending, staying, or annulling any order of the commission . . .." The policy behind that rule was stated in

*Duquesne Light Co. v. Borough of Monroeville,* 449 Pa. 573, 298 A.2d 252 (1973), where the court explained that the public welfare required policy decisions be made by a statewide, not local, body. For reasons similar to those set forth above, the adjudications in the instant case correctly determined that the PUC regulations did not apply to the subject matter of the controversy. The injunctions issued in the instant cases neither modified nor suspended the PUC orders to gas service companies, nor did they contravene the policy behind those orders. NFG entered into the contracts with appellees *prior* to the time that the PUC order applied to NFG, so that the order of the court below did not affect the PUC order.

Therefore, because the Public Utility Law establishes concurrent jurisdiction in the courts of common pleas and the PUC unless otherwise expressly provided; and because no section of the law does expressly provide otherwise in this case; and because the relief granted does not contravene any PUC order or policy applicable to the agreements in question at the time they were made, we hold that the court below had equitable jurisdiction over this matter.

Orders affirmed.

VAN der VOORT, J., concurs in the result.

SPAETH, J., files a dissenting opinion.

JACOBS and HOFFMAN, JJ., dissent.

SPAETH, Judge (dissenting).

I would not decide this appeal because I believe that it is before the wrong court.

The majority, in its opinion, disposes of three separate appeals: *Leveto v. National Fuel Gas Distribution Corp.,* No. 56 April Term, 1976; *Kasemer v. National Fuel Gas Distribution Corp.,* No. 57 April Term, 1976; and *National Fuel Gas Distribution Company v. The Pennsylvania Public Utility Commission,* No. 209 April Term,

1976. Nos. 56 and 57 are appeals from contempt orders entered against appellant National Fuel Gas for violation of court orders directing it to supply gas to appellees Leveto and Kasemer. No. 209 is an appeal from an order of the Pennsylvania Utility Commission; National Fuel Gas argues that this order compelled it to disobey the court orders directing it to supply gas to appellees. I agree that these cases should be joined, for they are mutually dispositive, but I think they should be joined and heard by the Commonwealth Court, not this court.

The appeal in No. 209 was originally brought before the Commonwealth Court. By order dated October 23, 1975, the Commonwealth Court transferred it to this court so that it might be consolidated with the appeals in Nos. 56 and 57. I believe that this procedure was wrong. The Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.403 [1] provides:

> The Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of administrative agencies in any of the following cases:
>
> (1) . . . appeals from the Pennsylvania Public Utility Commission . . ..

*Id.*

Since the appeal in No. 209 is from a final order of the PUC we cannot hear it.

It follows that we should transfer No. 209 back to the Commonwealth Court, and since Nos. 56 and 57 should be heard with No. 209, we should transfer them along with it. Having jurisdiction over No. 209, the Commonwealth Court is empowered to decide Nos. 56 and 57 by

1. Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 403, *as amended* June 3, 1971, No. 6, § 1; Dec. 21, 1973, No. 151, § 1, 17 P.S. § 211.403 (1976 Supp.).

virtue of § 503(c) of the Appellate Court Jurisdiction Act of 1970, which provides:

> The Superior Court and the Commonwealth Court shall have power pursuant to general rules, on their own motion or upon petition of any party, to transfer any appeal to the other court for consideration and decision with any matter pending in such other court involving the same or related questions of fact, law or discretion.