393 A.2d 673

ALLPORT WATER AUTHORITY, West Branch Area School
Board, Leroy Thompson and Shirley Folmar

v.

WINBURNE WATER COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued April 10, 1978.

Decided Oct. 20, 1978.

D. Mark Thomas, Harrisburg, with him Charles E. Thomas, Harrisburg, for appellant.

John M. Elliott, Philadelphia, for appellees.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

JACOBS, President Judge:

The Winburne Water Company has appealed from the Order of the lower court dismissing its preliminary objections to appellees' complaint.[1] For the reasons developed below, we reverse.

1. The question below was the jurisdiction of the court over the subject matter and, therefore, is appealable under the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672, which reads as follows: "Wherever in any proceeding at law or in equity the question of jurisdiction over the defendant or of the cause of action for which suit is brought is raised in the court of first instance, it shall be preliminarily determined by the court upon the pleadings or with depositions, as the case may require; and the decision may be appealed to the

The pertinent facts of the case may be summarized as follows: In December, 1976, appellees commenced this equity action by filing a complaint with the Clearfield County Court of Common Pleas. Appellee Allport Water Authority is one of appellant's customers, purchasing water from Winburne and then supplying water service to its own customers in the Community of Allport and the surrounding area. Appellees West Branch Area School Board, Leroy Thompson and Shirley Folmar are all customers of appellee Authority.

In their complaint, appellees allege that Winburne began supplying water to the Authority pursuant to an agreement dated March 31, 1961. That agreement provided, *inter alia* that:

> "12. Authority agrees to purchase such water as it may need for its water system from Water Company for a period of twenty (20) years, commencing with the date of completion, and to pay therefor at Water Company's effective tariff rates as they now exist or as they may be hereafter altered under the applicable laws of the Commonwealth of Pennsylvania; and Water Company does agree to furnish water to Authority in such amounts as to render reasonably adequate service. . . .

> "It being provided, however, that if requirements of Authority's water system shall exceed the ability of Water Company to provide reasonably adequate service, and the Water Company shall, after notice, be unable to furnish reasonably adequate service to meet the demands of Authority's system, the Authority may, at its option, obtain water from other sources and cancel this agreement. In the event of such cancellation, Authority shall have no claim or demand upon Water Company for damages by reason of Water Company's inability to render reasonably adequate service to the system of the Authority. . ."

By letter dated July 24, 1976, however, Winburne advised the Authority that it was not able to supply enough water to

Supreme Court or the Superior Court, as in cases of final judgments."

meet the ever-increasing demands of the Authority and its customers and, therefore, could no longer assume that responsibility.

Appellees allege that appellant's refusal to furnish an adequate supply of water constitutes a violation of its contractual obligations and seek, in this action, both damages and injunctive relief. Additionally, appellees moved the lower court for a special and preliminary injunction to prevent appellant from violating its contractual obligations and to order appellant to provide full and adequate water service.

On December 6, 1976, a hearing was held before Judge CHERRY on appellees' motion for a special and preliminary injunction. Thereafter, on January 3, 1977, Winburne filed its preliminary objections to appellees' complaint raising, *inter alia*, the issue of jurisdiction. This appeal followed the lower court's order of February 23, 1977, dismissing Winburne's preliminary objections.[2]

We start with the principle "that the courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not in the courts." *Lansdale Borough v. Philadelphia Electric Company*, 403 Pa. 647, 650, 170 A.2d 565, 567 (1961). See also *Chester County v. Philadelphia Electric Company*, 420 Pa. 422, 218 A.2d 331 (1966); *Einhorn v. Philadelphia Electric Company*, 410 Pa. 630, 190 A.2d 569 (1963); *Fogelsville & T. Electric Company v. Pa. P. & L. Company*, 271 Pa.

2. Judge CHERRY expressed the following considerations:
"Testimony in this case fully satisfied this Court that irreparable harm will be visited upon plaintiffs, the residents, and very particularly all of the school children attending West Branch Area School District schools, if some relief is not granted by way of trial and resultant proper decree or order if established by the evidence. Here, the plaintiffs and others intended to be served are without water the major portion of the time, while other customers of defendant are being served. In view of the testimony, this Court finds that irreparable harm will result unless relief is granted; and the Court must assume jurisdiction of the matter despite statutory provisions for relief before the Public Utility Commission under ordinary circumstances. [Citations omitted]."

237, 114 A. 822 (1921); *Byer v. Peoples Natural Gas Company*, 251 Pa.Super. 75, 380 A.2d 383 (1977); *Bell Telephone Company v. Sanner*, 248 Pa.Super. 273, 375 A.2d 93 (1977); *Elkin v. Bell Telephone Company*, 247 Pa.Super. 505, 372 A.2d 1203 (1977). Thus, it has long been recognized that the reasonableness, adequacy and sufficiency of public utility service are all matters within the exclusive original jurisdiction of the PUC. See *Duquesne Light Company v. Monroeville Borough*, 449 Pa. 573, 298 A.2d 252 (1972); *Behrend v. Bell Telephone Company*, 431 Pa. 63, 243 A.2d 346 (1968); *Elkin v. Bell Telephone Company*, supra. It is equally well-settled, however, that the PUC is not jurisdictionally empowered to decide private contractual disputes between a citizen and a utility. *See Byer v. Peoples Natural Gas Company*, supra; *Leveto v. National Fuel Gas Distribution Corporation*, 243 Pa.Super. 510, 366 A.2d 270 (1976); *Reading & Southwestern Street Railway Company v. Pennsylvania PUC*, 168 Pa.Super. 61, 77 A.2d 102 (1950).

Appellant contends that the Public Utility Law, Act of May 28, 1937, P.L. 1053, 66 P.S. § 1101 *et seq.*, and the decisions of our courts delineating the jurisdiction of the PUC when questions concerning utility service are raised can lead us to but one conclusion—that original jurisdiction over the instant litigation is vested exclusively within the PUC. This assertion is based on appellant's belief that the essential issue in the case is a question of the adequacy of the water service provided by it, and that any such decision must necessarily await a determination by the PUC as to what is adequate water service under the circumstances. Moreover, it is appellant's position that the existence of the 1961 agreement setting forth the basis on which the water service was to be furnished does not oust PUC jurisdiction over the question involved. We agree with appellant's contentions.

The cases upon which appellant principally relies are *Elkin* and *Sanner.* Those cases do stand for the general proposition that when a utility's failure to maintain reasonable, adequate and sufficient service is alleged, regardless of the

relief sought, it is for the PUC to determine initially whether or not the service provided has fallen short of the standard required of the utility or, more importantly, what exactly that standard is. However, any discussion of *Elkin* and *Sanner* at this point would be incomplete without a consideration of *Behrend v. Bell Telephone Company*, 242 Pa.Super. 47, 363 A.2d 1152 (1976), *vacated and remanded on other grounds*, 473 Pa. 320, 374 A.2d 536 (1977).

In *Behrend*, a telephone company customer sought to recover damages for the omission of his name from Bell's directories and the directory assistance operators' lists, and for the disruption of his telephone service. Bell argued that the lower court erred in permitting a jury to proceed to the merits of the case since Behrend's allegations raised questions within the exclusive original jurisdiction of the PUC. After a studied consideration of the Public Utility Law and the decisions of our courts thereunder, we concluded that the regulatory authority of the PUC over utility service *did not* remove from the court's jurisdiction an action for damages based on a failure of service. Rather,

> "The courts retain jurisdiction of a suit for damages based on negligence or breach of contract wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts." *Id.*, 242 Pa.Super. at 59, 363 A.2d at 1158 (citation omitted) (footnote omitted).

We rejected Bell's claims that there were factual matters requiring reference to the PUC. We did so, however, only because the question of the reasonableness or adequacy of Bell's methods of providing utility service was not before us.

In both *Elkin* and *Sanner*, the utility customers argued that the above-quoted passage in *Behrend* was dispositive, *i. e.*, that the Court of Common Pleas was the proper jurisdictional forum to resolve the issue of Bell's negligence or breach of contract in the performance of its legally imposed and contractually adopted obligations. In each case, however, the customer's pleading put at issue the adequacy of the service provided by the utility. Therefore, in both *Elkin*

and *Sanner,* we recognized the need for an initial PUC adjudication, for it was only after such an adjudication by the PUC that a court could proceed to determine the issues of liability and damages that are unquestionably within its jurisdiction.

Appellees' complaint here, as did the pleadings in *Elkin* and *Sanner,* concerns the adequacy of the service provided by a public utility. While seeking injunctive relief and compensatory damages, appellees based their claimed entitlement to that relief solely on appellant's alleged failure to furnish full and adequate water service as called for in the 1961 agreement. We agree with appellant that the existence of the 1961 agreement does not change the nature of the present inquiry. Section 401 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, art. IV, § 401, 66 P.S. § 1171, sets forth the obligation of utility companies to provide service: "Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons . . . and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. . . ." It is apparent to us that appellant's contractually adopted obligation to "render reasonably adequate service" merely echoes its legally imposed obligation as set forth by the Public Utility Law. A basic question still remains: What exactly is reasonably adequate water service under the circumstances? Although appellees would have us hold otherwise, the instant case does not simply involve a breach of contract. Rather, appellant's complaint raises questions which, as established by a long line of Pennsylvania appellate decisions, should be decided in the first instance by the PUC.

Remaining for our consideration is the question of whether or not our Supreme Court's recent decision in *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1978), dictates a contrary result. We think not.

In *Feingold*, appellants commenced an action in Equity against Bell Telephone Company, seeking both injunctive relief and compensatory and punitive damages. Appellants alleged in their complaint that Bell: (1) wrongfully disconnected a device designed to refer persons calling appellants' to appellants' correct telephone number; (2) wrongfully disconnected appellants' telephone service upon discovering appellants had attached to their telephone a privately maintained answering service; and (3) wrongfully refused to provide appellants with mobile telephone service. Bell filed preliminary objections to the complaint, and after argument, the lower court entered an order dismissing the complaint because appellants had failed to exhaust their administrative remedies. Our Supreme Court, speaking through Mr. Justice NIX, reversed the order of the Court of Common Pleas.

"In the instant case, appellant's complaint, while seeking injunctive relief, also asks for compensatory and punitive damages in every count. Although the lower court accurately noted that the Public Utility Law provides that any person may complain to the PUC about the actions of a public utility, quoting the Act of May 28, 1937, *as amended*, Act of October 7, 1976, P.L. 1057, No. 215, § 19, P.L. 1053, art. X, 1001, 66 P.S. § 1391 (Supp.1977–78), a complaint by appellant to the PUC seeking damages could not have resulted in an award by the PUC even if that agency had determined the complaint to be meritorious. It is clear that the remedial and enforcement powers vested in the PUC by the Public Utility Law were designed to allow the PUC to enforce its orders and regulations but not to empower the PUC to award damages or to litigate a private action for damages on behalf of a complainant. The rule requiring exhaustion of administrative remedies is not intended to set up a procedural obstacle to recovery; the rule should be applied only

where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested. [Citation omitted]. In the instant case, appellant could not have been made whole by the PUC, thus the administrative remedy was not 'adequate and complete.' "

*Id.*, 477 Pa. at 9, 383 A.2d at 795–796 (citation omitted) (footnotes omitted).

Appellees very strenuously argue that *Feingold* is dispositive of the instant case. We, however, disagree; the scope of that decision is distinctly delimited. Our Supreme Court recognized that *Feingold's* claims merely raised questions involving the utility's performance of its contractual or tort law obligations owed to Feingold. In that respect, the case is on all-fours with *Behrend v. Bell Telephone Company,* 242 Pa.Super. 47, 363 A.2d 1152 (1976), *vacated and remanded on other grounds,* 473 Pa. 320, 374 A.2d 536 (1977). The Court in *Feingold* went on to concede, however, "that cases raising questions of the adequacy of utility service to an entire geographic area may present problems which should be addressed initially by the P.U.C." *Id.* 477 Pa. at 11, n. 7, 383 A.2d at 796 n. 7. And that, precisely, is the situation we are faced with here.

On the basis of all of the foregoing, we conclude that the Court of Common Pleas of Clearfield County lacks the jurisdictional competency to entertain this action.[3]

Order reversed.

3. Appellees' contention to the contrary notwithstanding, Judge CHERRY's finding that irreparable harm will result unless relief is granted does not dictate a different conclusion. *West Homestead Borough School District v. Allegheny County Board of School Directors,* 440 Pa. 113, 269 A.2d 904 (1970) and *Northvue Water Company, Inc. v. Municipal Water & Sewer Authority of Center Township,* 7 Pa.Cmwlth. 141, 298 A.2d 677 (1972) stand for the proposition that a Common Pleas Court can exercise jurisdiction over a dispute to prevent the visitation of irreparable harm even where a complete and adequate method exists for the disposition of that type of dispute. Those cases, however, are of no help to appellees in the instant litigation.

The application of the exception recognized in *West Homestead, Northvue* and cases of similar ilk depends, at the very least, upon a finding by the chancellor that *equitable* relief is necessary to prevent

HESTER, J., files a dissenting statement.

HOFFMAN, J., did not participate in the consideration or decision of this case.

HESTER, Judge, dissenting:

I dissent. I would affirm the adjudication of the court below, *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1978); *West Homestead Borough School District v. Allegheny County Board of School Directors*, 440 Pa. 113, 269 A.2d 904 (1970); and *Northvue Water Company, Inc. v. Municipal Water & Sewer Authority of Center Township*, 7 Pa.Cmwlth. 141, 298 A.2d 677 (1972).

The court below found as a fact that there was a threat of imminent and irreparable harm. This was sufficient to give that court jurisdiction over the subject matter involved in the within equity proceedings.

the visitation of irreparable harm or that irreparable harm will follow if the statutorily prescribed method is followed. Here, we have a finding of neither. Surely, a mere finding by the chancellor that *some* relief is necessary does not suffice.

We hasten to add that we are not being over-technical in this holding. Quite simply, to agree with appellees here would be to permit the narrow exception to swallow the rule.