## Bell Telephone Company of Pennsylvania v. Mayerson

*William M. Hebrank*, for plaintiff.
*Hy Mayerson*, prose.

GAWTHROP, *J.*, January 28, 1980—We have before us the preliminary objections of plaintiff, Bell Telephone Company of Pennsylvania (hereinafter Bell), to counts I and III of the counterclaims[1] filed against Bell by defendant, Hy Mayerson, Esq. Bell's complaint in assumpsit alleges Bell's own "oversight" in billing defendant for his business tele-

---

1. Although plaintiff filed ten preliminary objections to defendant's answer, new matter, and counterclaims, its brief addresses only the two preliminary objections in the nature of petitions raising questions of jurisdiction as to two of defendant's three counterclaims. Accordingly, we deem its four motions to strike, three demurrers, and its motions for more specific pleading to be waived. See: Chester County Rule 211(a); Com. v. Williams, 476 Pa. 557, 383 A. 2d 503, 510, fn. 11 (1978); Com. v. Hagans, 483 Pa. 415, 397 A. 2d 412 (1979); Com. v. Klobuchir, 486 Pa. 241, 405 A. 2d 881, 884 (1979).

phone service which resulted in its underbilling him for one year. Bell alleges that upon its discovery of its error, it corrected all future bills and demanded that defendant pay the difference between the correct monthly rate and the rate at which it had charged him for the year in question. Following his repeated refusals to do so, it brought this suit.

The first count of defendant's counterclaim alleges his reliance on the rate information given him by Bell's agents, prior to the installation of his telephone, and his acceptance of Bell's "offer." He asks the ". . . return of all unagreed-upon charges paid under threat of discontinuance of service. . . ." The third count avers Bell's duty ". . . to inform each customer of the availability of discounts, package deals, special or optional services which, if chosen by the customer, would minimize his probable future telephone bills . . . " and alleges plaintiff's breach thereof.

Bell's jurisdictional claim is that the issues defendant raised in those two counts are subject to the original exclusive jurisdiction of the Pennsylvania Public Utility Commission (hereinafter PUC), and may not be heard by this court at this stage of the proceedings. Although Bell concedes our power to determine its liability for negligence or breach of contract, it asserts that we may not exercise that power unless and until the PUC has made the initial determination that Bell has breached a duty. This argument it bases on the PUC's exclusive jurisdiction of adequacy of service and legality of rates. See Einhorn v. Philadelphia Electric Co., 410 Pa. 630, 190 A. 2d 569 (1963); Allport Water Authority v. Winburne Water Co., 258 Pa. Superior Ct. 555, 393 A. 2d 673 (1978).

## ISSUES

I. Is defendant's claim that he relied upon the representation of Bell's agents as to cost in deciding what telephone service to install, and his demand that unagreed-upon charges paid by him be returned, within the exclusive jurisdiction of the PUC?

II. Is defendant's claim that Bell had a duty to inform him of the most economical service available to meet his needs, and that Bell breached that duty, within the exclusive jurisdiction of the PUC?

We have concluded that this court has jurisdiction of both claims.

## DISCUSSION

Initially, we must consider the nature and purpose of the grant of exclusive original jurisdiction to the PUC, in order to determine where these claims fit into the regulatory scheme. As was stated by our Supreme Court in Chester County v. Philadelphia Electric Co., 420 Pa. 422, 425, 426, 218 A. 2d 331, 333 (1966):

"'Initial jurisdiction in matters concerning the relationship between public utilities and the public . . . [has been held to be in the PUC in matters] involving rates, service, rules of service, extension and expansion, hazard to public safety due to use of utility facilities, installation of utility facilities, location of utility facilities, obtaining, alerting, dissolving, abandoning, selling or transferring any right, power, privilege, service, franchise or property and rights to serve particular territory. . . .'

"This reasoning is irrefutable. The necessity for conformity in the regulation and control of public utilities is as apparent as the electric lines which

one views traversing the Commonwealth. If each county were to pronounce its own regulation and control over electric wires, pipelines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state. It is for that reason that the Legislature has vested in the Public Utility Commission exclusive authority over the complex and technical service and engineering questions arising in the location, construction and maintenance of all public utilities facilities. . . ." (Citations and emphasis omitted.)

The power to regulate, however, does not encompass the power to award damages to a private litigant; this traditionally judicial remedy is left to the courts. See Feingold v. Bell of Pa., 477 Pa. 1, 8, 383 A. 2d 791, 794 (1977); 66 Pa.C.S.A. §103(c).[2] "The courts retain jurisdiction of a suit for damages based on negligence or breach of contract wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts." Behrend v. Bell Telephone Co., 242 Pa. Superior Ct. 47, 59, 363 A. 2d 1152, 1158 (1976), vacated and remanded on other grounds, 473 Pa. 320, 374 A. 2d 536 (1977), quoted with approval in Allport Water Authority v. Winburne Water Co., supra, 258 Pa. Superior Ct. at 560, 393 A. 2d at 675. Accordingly, our task in this case is to determine whether defendant has raised

---

2. That section provides as follows: "Remedies cumulative.—Except as otherwise provided in this part, nothing in this part shall abridge or alter the existing rights of action or remedies in equity or under common or statutory law of this Commonwealth, and the provisions of this part shall be cumulative and in addition to such rights of action and remedies."

issues of Bell's negligence or breach of contract, or whether, as Bell argues, the only issues raised are the adequacy and reasonableness of their rates and service.

## 1. COUNT I

Bell's complaint seeks to require defendant to pay the difference between the amount billed from May, 1976 to April, 1977, and the established tariff rate, of which he was, concededly, not informed "[d]ue to an oversight."[3] Defendant's counterclaim alleges his reliance upon Bell's offer, his acceptance thereof, and his resulting damages.

Although Bell strains to convince us that the issue defendant raises is the reasonableness of rates or service,[4] we cannot agree with that characterization. The theory of defendant's claim is that he was given information upon which he relied, not that Bell's actual tariff is unreasonable, nor that it was established in contravention of statute or regu-

---

3. See Paragraph 4 of Bell's complaint.

4. In its brief, Bell states that "[t]he defense in this case is not based upon any common law duty or breach of a duty set forth in a private contract, but on the contrary, creates an issue of the obligation of plaintiff to adhere to and collect its tariff rates as required by sections 1302 and 1303 of the Public Utility Law . . . , based upon a contention that plaintiff failed to accurately quote such rates or notify defendant of changes therein or quote the most economical rate which subjects are exclusively regulated in the first instance by the Public Utility Commission, pursuant to the statutory provisions set forth above." Our reading of this linguistic labyrinth leads us to conclude that Bell is speaking of precisely the sort of legally imposed obligations discussed in Behrend and Allport Water Authority, supra. That the duties are created by statute or regulation does not remove the litigation of their breach from the courts. See Behrend, supra.

lation. The nub of the allegation is that Bell's agent negligently performed the duty to provide accurate information concerning rates.

Such a claim has little in common with the rate issues reserved for the PUC, illustrative examples of which may be found in Einhorn v. Philadelphia Electric Co., supra, where the appellant claimed that the utility had overcharged him because the payments requested exceeded the "excess costs" permitted by the filed tariff for installations of the type received by him. Such a determination requires an understanding of the excess costs allowable within the rate structure and is thus appropriately determined by the PUC which has that technical and specialized knowledge of the subject matter. See also Feingold v. Bell of Pa., supra, fn. 3.

Here, no such technical question is posed, nor would the policy of centralized control over utility service be furthered by our refusal of jurisdiction. Defendant's counterclaim is similar to other claims against Bell which have withstood jurisdictional challenges identical to this one. In Behrend v. Bell Telephone Co., supra, claims alleging disruptions in service and omission of plaintiff's name from directory lists were held to be within the jurisdiction of the courts of common pleas rather than the PUC; in Feingold v. Bell Telephone Co., supra, allegations of improper disconnection of telephone service and refusal to correct an inoperative referral recording were held to constitute a private right of action to be pursued in the courts. The Feingold court's analysis of the claim in that case, which they held not to be amenable to agency relief, we find dispositive here. The court stated:

"The appellant's complaint in the instant case merely raises the question of whether appellant's

alleged damages were proximately caused by a breach of a legal duty owed appellant by appellee. This issue is of the type traditionally disposed of by courts of law, and we do not see how the 'administrative expertise' of the PUC would contribute to the resolution of this issue." 477 Pa. at 11, fn. 7, 383 A. 2d 796, fn. 7.

We consider the duty properly to disconnect service at issue in Feingold to be similar to the alleged duty to provide accurate rate information upon request, which is before us here. Accordingly, we have overruled Bell's preliminary objection no. III(a).

## 2. COUNT III

The third count of defendant's counterclaim alleged Bell's duty to inform him of the most economical service available to him, and its breach of that duty. Although Bell does not, in its brief, distinguish between its jurisdictional claims as to the two counts, we infer that its argument concerning our jurisdiction over adequacy-of-service claims relates to this latter count.

Most of the discussion in the preceding section directly applies to this issue as well. The cases involving the question of reasonable and adequate service have been distinguished from those alleging negligent performance of an obligation. For example, in Allport Water Authority v. Winburne Water Co., supra, the Superior Court held that a claim based on the contractual obligation of defendant-Water Company to furnish plaintiff-Authority "such water as it may need" raised the issue of "the adequacy of the service provided by a public utility" and was within the PUC's exclusive original jurisdiction. The contract claim was secondary to the PUC's threshold determination

whether the water service provided was "adequate." In *Bell Telephone Co. v. Sanner,* 248 Pa. Superior Ct. 273, 375 A. 2d 93 (1977), the court discussed defendant's answer, new matter and counterclaim, in which he alleged that Bell's use of defective telephone equipment constituted the breach of an implied warranty of fitness for a particular purpose. This was held to raise a question of adequacy of service for the PUC, as defendant claimed that the services rendered by Bell were so defective as to be of no value. So also, in *Elkin v. Bell Telephone Co.,* 247 Pa. Superior Ct. 505, 372 A. 2d 1203 (1977), plaintiff's allegation of negligent failure to provide adequate telephone and directory assistance service was held to raise for decision by the PUC the threshold question of adequate service. Following any determination of inadequacy by the PUC, the matter would be remanded to court for a determination on negligence and damages. See the concurring opinion of Spaeth, *J.,* 247 Pa. Superior Ct. at 512, 372 A. 2d at 1206. These cases clearly show that where one raises the issue of adequacy of service provided by Bell, the telephone service, not the information service, will be scrutinized by the PUC to determine whether that agency's standards are met. None of the cases remotely suggests that the question as to whether Bell has a duty to quote its most economical rates is a "service" question, peculiarly within the expertise of the PUC.

Based on the foregoing, we hold that count III of defendant's counterclaim raises negligence, an issue within our original jurisdiction.[5] Accordingly, we enter the following

5. Pennsylvania Constitution, Art. 5, §5(b).

90

## ORDER

And now, January 28, 1980, plaintiff's preliminary objections are hereby overruled and dismissed.