435 A.2d 614

**Joseph G. DeFRANCESCO and Frank Crea T/D/B/A Mt. Washington Ornamental Iron Works Company and Frank G. DeFrancesco and Frank Crea, as Individuals**

v.

**WESTERN PENNSYLVANIA WATER COMPANY, a Corporation, Appellant.**

**Joseph F. LOY and Bernice Loy T/D/B/A Joseph F. Loy Tire Service Inc.**

v.

**WESTERN PENNSYLVANIA WATER COMPANY, a Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued May 22, 1981.

Filed Oct. 2, 1981.

Petition for Allowance of Appeal Granted Jan. 11, 1982.

154

George I. Buckler, Pittsburgh, for appellant.

C. Robert Keenan, III, Pittsburgh, for appellees.

Before CERCONE, P. J., and MONTGOMERY and VAN der VOORT, JJ.

CERCONE, President Judge:

This case involves an appeal taken by Western Pennsylvania Water Company (hereinafter West Penn) challenging, *inter alia*,[1] the jurisdiction of the court of common pleas to hear this case. Finding that initial jurisdiction over this controversy is vested in the Pennsylvania Public Utility Commission, we vacate the judgments of the lower court awarding damages to the appellees herein.

On August 11, 1973, a fire erupted in a large pile of tires located in the rear of property owned by Joseph F. Loy Tire Service, Inc. (hereinafter Loy) at 1655 through 1659 Saw Mill Run Boulevard, Pittsburgh, Pennsylvania. The Fire Department of the City of Pittsburgh promptly arrived on the scene while the flames were still confined to one area. However, due to a problem with both the volume and the sporadic nature of the water supply being pumped from the fire hydrants at that location, the firemen were unable to confine the fire which then spread across the Loy property and onto the adjoining property of Joseph G. DeFrancesco and Frank Crea, trading and doing business as Mt. Washington Ornamental Iron Works Company and Joseph G. DeFrancesco and Frank Crea as individuals (hereinafter DeFrancesco). Both businesses were completely consumed by the fire.

On March 13, 1975, Loy filed a complaint in trespass and in assumpsit in the Court of Common Pleas of Allegheny County alleging that West Penn failed to provide adequate

---

1. Because of our disposition of the jurisdiction question, we need not address West Penn's allegations of error which are listed as follows:

(1) Whether the lower court erred in failing to strike as hearsay testimony concerning alleged statements as to the cause of the diminished water supply made to Fire Chief Dudak and Joseph Loy by an unidentified individual who said he was an employee of West Penn;

(2) Whether the lower court erred in holding Rule 17 of West Penn's tariff void as an exculpatory provision against public policy;

(3) Whether the lower court erred in refusing to charge on Section 328(d) of the Restatement (Second) of Torts (1965) concerning the requirements of invoking the res ipsa loquitur doctrine; and

(4) Whether the lower court erred in refusing to instruct the jury as to the apportionment of damages between two different causes.

and sufficient water service to combat the blaze. On March 26, 1975, DeFrancesco filed a similar complaint. Throughout the trial, West Penn objected to the admission of any evidence regarding the adequacy or sufficiency of the water supply, asserting that this matter was not within the jurisdiction of the courts to adjudicate but within the exclusive jurisdiction of Pennsylvania Public Utility Commission. Appellees, Loy and DeFrancesco, contend this case does not involve the adequacy or sufficiency of water service but is one involving the law of negligence in which the traditional tort obligations and principles are applicable. The lower court, however, entertained jurisdiction over this controversy and the jury returned verdicts in favor of appellees Loy and DeFrancesco awarding damages in the amounts of $173,000 and $72,000 respectively, plus interest in the amounts of $1,663.39 and $692.28 respectively. After West Penn's motions for new trial and for judgment notwithstanding the verdict were denied by the court en banc, this appeal followed.

It is well-settled law that initial jurisdiction over matters involving the reasonableness, adequacy or sufficiency of a public utility's service, facilities or rates is vested in the PUC and not in the courts. *See Elkin v. Bell Tel. Co. of Pennsylvania*, 491 Pa. 123, 420 A.2d 371 (1980); *Allport Water Auth. v. Winburne Water Co.*, 258 Pa.Super. 555, 393 A.2d 673 (1978). As early as 1961, the Pennsylvania Supreme Court stated:

Although we still possess the right of judicial scrutiny over the acts of the PUC, no principle has become more firmly established in Pennsylvania law than that the courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not in the courts. It has been so held involving rates, service, rules of service, extension and expansion, hazard to public safety due to use of utility facilities, installation of utility facilities, location of utility facilities, obtaining, alerting, dissolving, abandoning, selling or transferring any right, power, privilege, service,

franchise or property and right to serve particular territory.

*Lansdale Boro. v. Phila. Elec. Co.*, 403 Pa. 647, 650–651, 170 A.2d 565, 567 (1961) (footnotes omitted).

In *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977), however, the Court held that the PUC does not have jurisdiction over *suits for damages* based upon the failure to provide adequate and sufficient services and, therefore, such matters can initially go to the courts.[2] Finally, and most recently, the Court has decided *Elkin v. Bell Tel. Co.*, 491 Pa. 123, 420 A.2d 371 (1980) in which the Court approved a bifurcated procedure of referring damage cases involving utility services, facilities or rates to the PUC to make an initial determination of whether the utility has or has not met up to statutorily mandated standards.[3] According to this procedure, a pending action for damages in the court of common pleas is either rendered moot if the PUC finds that the services are reasonable and adequate, or the action proceeds forward based upon the PUC findings of the inadequacy and unreasonableness of the service.[4] *See also Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 18 -19, 383 A.2d 791, 799–801 (1977) (Pomeroy, J., dissenting). Moreover, the Court in *Elkin* decided that *Feingold* did not oust the PUC of jurisdiction *"for all purposes* in any cases involving an action for damages." 491 Pa. at 130, 420 A.2d at 375 (emphasis in original). The decision stated that such an "interpretation of *Feingold* is too broad and would 'virtually strip' the PUC of all jurisdiction merely by framing the

**2.** It should be noted that *Feingold* really dealt with the narrower question of the completeness and adequacy of administrative remedies. Merely alleging claims for damages under *Feingold*, would, therefore, not operate to vest the courts with jurisdiction when the available administrative remedies were adequate and complete to make the complainant whole.

**3.** The limited determination is challengeable through the normal channels of appeal to the Commonwealth Court.

**4.** The specific holding of *Elkin* was that a PUC determination that services being rendered are adequate and reasonable is binding in a suit for damages in a court of common pleas, and relitigation of that issue, is therefore, precluded.

allegations in contractual and/or trespassing terminology, and demanding damages." *Id.*[5] The *Elkin* decision cited extensively from Justice Pomeroy's "insightful dissenting opinion in *Feingold* which expressed concern for such a sweeping interpretation." *Id.* In fact, it is Justice Pomeroy's dissent espousing the bifurcated procedure which is now expressly vindicated by *Elkin*:

... And, of course, the PUC is endowed by the Public Utility Code with authority to enforce compliance by public utility companies with the standards of service to which legally the companies must adhere. *See* Act of May 28, 1937, P.L. 1053, art. IX, § 901, 66 P.S. § 1341 *et seq.* The PUC, accordingly, is the agency which the legislature has created both to interpret the standards of service of a public utility and to enforce them. The only power which the Commission lacks in the present case is the ability to award damages for past breaches of duty by the Telephone Company, assuming such breaches have occurred and entail damages. This lack, however, is not such as oust the PUC of its primary jurisdiction. Resort to the courts may well be based on PUC findings which will then be in hand. The majority, however, would virtually strip the PUC of all jurisdiction merely because a demand for damages is contained in appellant's complaint. Such a result is unwarranted.

The proper procedure in a case such as the instant one is, I suggest, to stay the proceeding in the court of common pleas until a determination of the questioned standards of service can be had by the PUC in accordance with Section 412 of the Public Utility Code (66 P.S. § 1182). This course of procedure is necessary because the dispute is uniquely within the expertise of the PUC; it is only the relief sought, i. e., the allowance of damages, which is beyond the legislative grant of powers to the

5. In *Allport Water Auth. v. Winburne Water Co.*, 258 Pa.Super. 555, 563, 393 A.2d 673, 677 (1978) our Superior Court held that the scope of *Feingold* is "distinctly delimited" because that case merely involved a utility's contractual and tort law obligations rather than its statutorily imposed duty to provide reasonable and adequate service to the public.

Commission. The proposition is succinctly put in Profes-
sor Davis' authoritative treatment of administrative law:

> "(1) On the question whether the doctrine [of primary
> administrative jurisdiction] applies to problems or relief
> which are beyond administrative jurisdiction, the theory
> seems reasonably clear. The test is not whether some
> parts of the case are within the exclusive jurisdiction of
> the courts; the test is whether some parts of the case
> are within the exclusive jurisdiction of the agency.
> Because of the purpose of the doctrine—to assure that
> the agency will not be by-passed on what is especially
> committed to it—and because resort to the courts is still
> open after the agency has acted, *the doctrine applies*
> *even if the agency has no jurisdiction to grant the relief*
> *sought.*" (Emphasis added.)

Davis, Administrative Law Treatise, § 19.07, p. 39 (1958).
See also Davis, Administrative Law of the Seventies,
§ 19.07, pp. 444–45 (1976); Annotation, Doctrine of Pri-
mary Administrative Jurisdiction as Defined and Applied
by the Supreme Court, 38 L.Ed.2d 796, § 8 (1974); Jaffe,
Judicial Control of Administrative Action, pp. 138–39
(1965). Accord: *United States v. Michigan National*
*Corp.*, 419 U.S. 1, 5, 95 S.Ct. 10, 12, 42 L.Ed.2d 1, 5 (1974);
*Pan American World Airways, Inc. v. United States*, 371
U.S. 296, 313, n.19, 83 S.Ct. 476, 486, n.19, 9 L.Ed.2d 325,
337, n.19 (1963); *Hewitt-Robins v. Eastern Freight-Ways,*
*Inc.*, 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1963); *Elkins*
*(sic) v. Bell Telephone Co.*, 247 Pa.Super. 505, 372 A.2d
1203 (1977) . . . .

. . . . .

Once the administrative tribunal has determined the is-
sues within its jurisdiction, then the temporarily suspend-
ed civil litigation may continue. The direction and scope
of the litigation will of course be guided and determined
by the nature of the agency adjudication.

477 Pa. at 18–22, 383 A.2d at 799–801 (Pomeroy, J., dissent-
ing). He further stated in footnote five that:

> It may be worth noting, however, that should the claim-
> ant seek review of the PUC determination, his right to do

so would not be affected by the procedure here advocated. *See* Section 508(e) of the Appellate Court Jurisdiction Act of 1970, July 31, P.L. 673, No. 223 (17 P.S. § 211.508(e)) which transferred to and vested in the Commonwealth Court all appeals from the PUC which were originally vested in the Superior Court pursuant to §§ 1101–1106 of the Public Utility Code, 66 P.S. §§ 1431–1437. Thus review of the PUC action should proceed through the normally existing route of review (*see Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973)). The pending action in the court of common pleas will not, of course, be used to relitigate the question of adequacy of services, but only to litigate such questions as were not resolved through administrative channels and to grant such relief, if any, including damages as may be appropriate in light of the administrative determination.

*Id.*, 477 Pa. at 22 n.5, 383 A.2d at 801–802 n.5. (Pomeroy, J., dissenting).

Thus, our Supreme Court has arrived at an "accommodation of the respective spheres of adjudicatory authority of the PUC and the Courts of Common Pleas where each has jurisdiction over some facet of the controversy." *Elkin, supra,* 491 Pa. at 128, 420 A.2d at 374.[6] *See also Feingold, supra,* 477 Pa. at 22, 383 A.2d at 802 (Pomeroy, J., dissenting) ("a balancing of the roles of the courts and administrative tribunals is necessary to insure fairness to the parties while effectuating the public concern that utility companies be regulated in an efficient and consistent manner").

**6.** In *Elkin*, Justice Roberts wrote a concurring opinion in which he stated:

Thus, in any case involving the furnishing and maintenance of "adequate, efficient, safe and reasonable service and facilities," deferral to the PUC is not only appropriate but legislatively required. Where, as here, the PUC determines that the service rendered by the utility is adequate and reasonable, that determination, reviewable through the administrative process, is binding and conclusive. Where it is determined by the PUC that a utility's service falls short of the statutory standard, only in that instance may a court utilize that determination in a proceeding for damages. *Elkin, supra,* 491 Pa. at 137, 420 A.2d at 378 (Roberts, J., concurring).

■■■ We, therefore, conclude that the present state of the law in this volatile area can be accurately summarized in the following manner. When a case involves issues unrelated to utility services, facilities or rates, then obviously the courts of general jurisdiction can exercise their dominion over the matter. On the other hand, if the matter is one which does concern services, facilities or rates, then the PUC has initial jurisdiction over the controversy. The *exclusiveness* of the PUC's jurisdiction, however, depends upon the adequacy of the administrative remedies available to the complaining party: Where the administrative remedies are adequate and complete, then the PUC is the exclusive forum to hear the case and there is no recourse to the courts of general jurisdiction. But, when the available administrative remedies are inadequate to make the complainant whole, then the bifurcated procedure of referral adopted by *Elkin* should be implemented. In accordance with these principles, the particular facts of the instant case must be closely examined to determine the outcome of the jurisdictional question presented.

■■■ The allegations in the instant case were couched in trespassory and contractual language, but the basis of the claim was the insufficiency of the water supply and pressure to put out the fire, and the inadequate maintenance of the pipes, valves and other facilities. Both complaints were replete with the following types of allegations:

*FOURTH* : At all times material hereto, defendant was under a duty to maintain in good and proper working order all things necessary for the supplying of water to the users thereof in the City, including, but not limited to pipes, fire hydrants, valves and *sufficient water and water pressure to meet the ordinary needs of the City.*

.     .     .     .     .

*NINTH* : During the aforesaid period, plaintiffs have relied upon defendant to provide *adequate and sufficient water services.*

.     .     .     .

*ELEVENTH*: As a result of defendant's failure to provide proper pipes, fire hydrants, valves and *sufficient water and water pressure*, the firemen were unable to extinguish the fire or confine it to the site of its origin; and the fire spread to plaintiff's aforesaid place of business and destroyed their property. (Emphasis added).

The pleadings here, like the pleadings in *Allport Water Auth. v. Winburne Water Co., supra, Bell Telephone Company v. Sanner*, 248 Pa.Super. 273, 375 A.2d 93 (1977) and *Elkin v. Bell Telephone Company*, 247 Pa.Super. 505, 372 A.2d 1203 (1977) *affirmed*, 491 Pa. 123, 420 A.2d 371 (1980), concern the reasonableness or adequacy of the service provided by a utility, in which case jurisdiction is in the PUC. A contrary result was reached in *Behrend v. Bell Telephone Company*, 242 Pa.Super. 47, 363 A.2d 1152 (1976) *vacated and remanded on other grounds* 473 Pa. 320, 374 A.2d 536 (1971) because the pleadings did not deal with adequacy or reasonableness of utility service. In *Allport*, we held that *Feingold, supra*, is on all fours with *Behrend* because it involved a utility's performance of its contractual or tort law obligations, rather than its statutorily imposed duties as a public utility. 258 Pa.Super. at 563, 393 A.2d at 677. *See Feingold, supra*, 477 Pa. at 11 n.7, 383 A.2d at 796 n.7. We cannot, however, say that this is true in the present case. Rather, this case is more akin to *Elkin, Allport*, and *Sanner* because the contention is that the water supply and water pressure were insufficient to enable the firemen to effectively combat the blaze.

[I]n both *Elkin* and *Sanner*, we recognized the need for an initial PUC adjudication, for it was only after such an adjudication by the PUC that a court could proceed to determine the issues of liability and damages that are unquestionably within its jurisdiction.

*Allport, supra*, 258 Pa.Super. at 560–561, 393 A.2d at 676.

Moreover, this case also involves a claim that the water company turned down a water supply valve in the appellees'

block in order to enable its workers to perform necessary repairs on the lines. In this regard, we note that the Public Utility Law, in addition to requiring that utilities provide reasonable and adequate service, facilities and rates, also mandates that utilities provide service which is "reasonably continuous without unreasonable interruptions or delay." Public Utility Law, Act of May 28, 1937, P.L. 1053, art. IV, § 401, 66 P.S. § 1171 (1959) now Public Utility Code, Act of July 1, 1978, P.L. 598, No. 116, § 1, 66 Pa.C.S. § 1501 (1980). Likewise, the Act imposes upon a public utility the duty to provide *safe* services and facilities as well.[7] *Id. See Midland Borough v. Steubenville, etc., Co.*, 300 Pa. 134, 150 A. 300 (1930); *Reading Co. v. Pa. P.U.C.*, 188 Pa.Super. 146, 146 A.2d 746 (1958); *Postal Telegraph—Cable Co. v. Pa. P.U.C.*, 154 Pa.Super. 340, 35 A.2d 535 (1944). This duty also comes into play in the present situation. Thus, like the courts in *Elkin, Allport* and *Sanner*, we hold that initial jurisdiction over this controversy is vested in the PUC.

On the basis of the foregoing analysis, we conclude that the court of common pleas lacked jurisdiction to hear this controversy initially. However, because the PUC lacks the power to fashion an award of damages which would be necessary in the present case to make the plaintiffs whole, its jurisdiction is not exclusive and the court below will, therefore, be able to conduct another trial in order to adjudicate the plaintiffs' claims for damages should the PUC decide that either the water service and pressure, the maintenance of the utility facilities, or the continuity of service were unreasonable, insufficient or inadequate under the circumstances. If the PUC determines that the service and

7. More specifically, the Act states that:
   [e]very public utility shall furnish and maintain adequate, efficient, *safe*, and reasonable *service and facilities*, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and *safety of its patrons, employees, and the public.* Such service also shall be reasonably continuous and without unreasonable interruptions or delay.
   66 P.S. § 1171 (emphasis added).

maintenance of facilities was reasonable, sufficient, adequate, and reasonably continuous, however, then such a determination is binding upon the court of common pleas which is thereby precluded from acting further in the matter. *Id.* Thus, on remand the lower court proceedings shall be stayed pending an initial determination by the PUC.

The judgments of the court below are vacated and the case is remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.