**Higgins v. West Penn Power Co.**

*George K. Hanna,* for plaintiffs.
*Clarence A. Crumrine,* for defendant.

SWEET, *P.J.,* August 19, 1983—This matter is before the court on the prliminary objections of defendant, West Penn Power Company to plaintiffs'

complaint in trespass, on the grounds that this court lacks jurisdiction, and on the grounds that the action is barred by the statute of limitations.

In March 1983, plaintiffs, Winfred A. Higgins, Jr. and Sheila M. Higgins, his wife, residing at R. D. No. 4, Burgettstown, Hanover Township, in this county, filed their complaint in trespass against defendant, West Penn Power Company, averring that on February 17, 1970, defendant Power Company entered into a right-of-way agreement with plaintiffs for an easement 200 feet in width for the construciton of an overhang electrical transmission line; that after installation of the system in the winter of 1973, plaintiffs, together with their son, had a constant reaction from the transmission system in the nature of shocks, which affected them when they were using their property, both outside and inside; that prior to the right-of-way agreement being entered into, defendant had instructed plaintiffs there would be no effect from the electrical transmission system; that there has been a continuing trespass from the date of installation to the filing of the complaint by virtue of the transmission of electrical current into plaintiffs' property; that defendant was negligent in the design of its installation, and in failing to take reasonable precautionary measures to protect plaintiffs, allowing the electrical shocks to continue, and in failing to advise plaintiffs that their lives would be constantly interferred with; that as a result of the continuing trespass, plaintiffs' use and enjoyment of their home has been seriously impaired, reducing the value of their home substantially; and that by reason of the existence of the shocks and the interference of their normal life-style, plaintiffs have become apprehensive, nervous, tense, and their mental health has been affected.

To this complaint, defendant Power Company filed preliminary objections raising a question of jurisdiction on the grounds that jurisdiction for the claim lay in the Public Utility Commission; that the plaintiffs previously filed their complaint with the Public Utility Commission, who dismissed their complaint in part, and sustained it in part.

Defendant also averred that plaintiffs' alleged damages arose in 1973; that they were first aware of their damage at least before September 19, 1977, the date when they filed the complaint before the Pennsylvania Public Utility Commission, and that the applicable statute of limitations for personal injuries is two years.

Defendant also attached to its preliminary objections a copy of the complaint filed by plaintiffs before the Public Utility Commission, and a copy of the P.U.C. order, and decision of the administrative law judge which was adopted by the P.U.C.

The court will consider defendant's preliminary objections on their merits since plaintiffs have raised no procedural objection.

Plaintiffs have alleged a continuing trespass or nuisance. Therefore, defendant's claim that the statute of limitations bars suit must be dismissed. 22 P.L.E. Limitation of Actions §64. See also, Restatement (Second) Torts §161, Comment b; Restatement (Second) Torts §930, Comment c.

The court has examined authorities cited by the parties: Behrend v. Bell Telephone Company, 242 Pa. Super. 47, 363 A.2d 1152 (1976); Feingold v. Bell of Pennsylvania, 477 Pa. 1, 383 A.2d 791 (1977); Elkin v. Bell Telephone Company, 247 Pa. Super. 505, 372 A.2d 1203 (1977), aff'd 491 Pa. 123, 420 A.2d 371 (1980); DiSanto v. Dauphin Consolidated Water Supply Company, 291 Pa. Super. 440, 436 A.2d 197 (1981); DeFrancesco v. Western

Pennsylvania Water Company, 291 Pa. Super. 152, 435 A.2d 614 (1982).

The Supreme Court of Pennsylvania has accorded primary jurisdiction concerning the adequacy and sufficiency of service rendered by a public utility to the Public Utility Commission. Elkin, supra.

The present case does not involve the adequacy or sufficiency of the electrical service being provided by defendant Power Company to plaintiffs or to the general public.

The P.U.C. has, however, asserted jurisdiction by reasons of Sections 1501 and 1505 of the Public Utility Code, 56 Pa. C.S. §1501 and 1505, which say in part:

"Every public utility shall furnish and maintain . . . safe and reasonable facilities and shall make such . . . changes, alterations, substitutions, extensions and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience and safety of its patrons, employees and the public. . . ."

"Whenever the commission, . . . finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient or unreasonably discriminatory, or otherwise in violation of this part, the commission shall determine and prescribe, by regulation or order, reasonable, safe, adequate, sufficient service or facilities to be observed, furnished, enforced or employed including all such repairs, changes, alterations, extensions, substitutions or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation and convenience of the public."

Justice Pomeroy in his dissenting opinion in Feingold v. Bell of Pennsylvania, supra, said this:

"Once the administrative tribunal has determined the issues within its jurisdiction, then the temporar-

ily suspended civil litigation may continue. The direction and scope of the litigation will of course be guided and determined by the nature of the agency adjudication." 383 A.2d at 801.

In the complaint filed by plaintiffs in this court, they alleged the use and enjoyment of their home has been seriously impaired, reducing the value of their home substantially to a minimum of 25 percent of the value, and that by reason of the existence of the shocks and interference of their normal life-style, plaintiffs have become apprehensive, nervous, tense, and their mental health has been affected, and they seek damages in excess of $10,000.

In the former complaint filed by plaintiffs before the Public Utility Commission, which is attached to defendant's preliminary objections in this matter, they complained that as a result of the installation of an electrical transmission system across their land they have suffered continuously from electric shock inside and outside their home, making it impossible for them to enjoy their home and land in any fashion; that they were specifically promised prior to installation of the line that no such a problem would occur; and they ask the commission to order West Penn Power to correct the faulty installation so as to eliminate the problem.

The Public Utility Commission found as a fact since the 500 kilovolt transmission line was energized in 1973, the Higgins' family has experienced electrostatic shocks both inside and outside the home; that the field intensity, although noticeable is neither dangerous to life nor sufficient for minimum ignition of open ventilated gasoline fumes; that the electrostatic shocks are irritating although not necessarily "harmful"; that the complaints presented no medical, psychological or psychiatric evidence of any kind that they suffered any physical or

mental impairment caused by the electrostatic shocks; that they presented no evidence that the design, construction, use or maintenance of the subject line was in any way deficient.

In its discussion, the Public Utility Commission found that the Higgins had failed to establish any effect on their mental health; that they were not claiming any physical injury; and failed to meet their burden of proof on the safety issue as it related to injuries, mental or physical, to their person.

The P.U.C. also discussed the requirement as to ordering changes in services and facilities to accommodate the convenience of its patrons and public and again found inadequate proof of this claim on the record; while the electrostatic shocks felt outdoors by the Higgins were admittedly irritating, they were "nuisance shocks", and not hazardous or dangerous; that the two solutions to the shocks suggested in the record: (1) erection of an aerial grid or screen of wires in the area of the strongest field intensity would be very unsightly, of limited value and not acceptable to the Higgins; that the other solution, elevation of the conductors from 33 to 43 feet would only reduce but not eliminate the electrostatic field strength; and that the $35,000 estimated cost was not justified by the "nuisance shocks". The Higgins' complaint to the P.U.C. was sustained only to the limited extent that the West Penn Power was required to provide the Higgins with proper grounding straps for their mowing equipment.

On the basis of the present record, it does not appear to the court that the Public Utility Commission adjudicated the claim of plaintiffs, that the use and enjoyment of their home had been seriously impaired, reducing the value of it substantially, nor has the P.U.C. adjudicated the claim that the right-of-way agreement was secured on the basis of a mis-

representation of the effects of the installation of the electrical transmission system across plaintiffs' land.

The facts alleged in plaintiffs' complaint may support an action for damages not only on the theory of common law negligence, but also private nuisance, as well as tortious misrepresentation.

Plaintiffs were seeking essentially equitable relief from the Public Utility Commission.

"Furthermore, considerations enter into the determination of the right to an injunction that are inapplicable or have less weight in determining the right to damages. An injunction may be obtained in a proper case against a threatened private nuisance, but an action cannot be maintained at law unless harm already has been suffered. (See §821C for a similar distinction regarding a public nuisance). Even when there is present harm, it is one thing to say that a defendant should pay damages for the harm his factory is causing but it is a different thing to say that he must close his factory if the harm cannot be stopped. For the purpose of determining liability for damages for private nuisance, an invasion may be regarded as unreasonable even though the utility of the conduct is great and the amount of harm is relatively small. (See §826, Comment f). But for the purpose of determining whether the conduct producing the invasion should be enjoined, additional factors must be considered. It may be reasonable to continue an important activity if payment is made for the harm it is causing but unreasonable to initiate or continue it without paying.

Thus denial of relief by way of injunction is not always a precedent for denial of relief by way of damages." Restatement (Second) Torts §822 Comment d.

"It may sometimes be reasonable to operate an

important activity if payment is made for the harm it is causing, but unreasonable to continue it without paying. The process of weighing the gravity of the harm against the utility of the conduct assesses the social value of the actor's activity in general." Restatement (Second) Torts §826 Comment f.

"Damage to neighboring landowners is frequently incident to the construction and operation of establishments employed in necessary public service, which nominally have the right of taking land by eminent domain. A railway embankment with an inadequate culvert diverts water upon nearby land; a municipal electric plant sends smoke and fumes into homes and factories; a city sewage disposal system pollutes a stream to the injury of bordering landowners. If the damage results from some minor feature of construction or management, so that it could be averted at slight expense, the normal remedy of successive actions for past invasions or relief by injunction would alone be available, as is also true if the harm results from an improper and unnecessary method of operation. But if the invasions are caused by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation, then it will usually not be abatable by injunction and the desirability of granting the injured person complete compensation for past and future invasions is apparent.

Moreover, the public interest, which actuates the courts to deny an injunction caluclated to interfere with an essential public service, requires also that the utility enterprise be permitted, when sued for past invasions, to have the court ascertain and award complete compensation for the continuing injury, instead of awaiting successive actions. This is most obviously true when the damage is a necessary incident of the lawful operation of the enter-

prise, in which case the allowance of full damages has the effect of the exercise of the power of eminent domain. Even when, however, the damaging feature cannot be said to be authorized by law but it is incident to the use of the existing plant and not avoidable by reasonable effort or expense, the court may determine that the public convenience requires that the plaintiff submit to be compensated completely, once for all." Restatement (Second) Torts §930 Comment c.

It should be noted that in a proper case, even if the impairment of the value of property has no basis in scientific fact, damage to the reputation of the property may also be shown. Kassab v. Central Soya, 51 Wash. Co. Reps. 115 at 118 (1970).

Defendant's preliminary objections are, therefore, dismissed.

## ORDER OF THE COURT

And now, this August 19, 1983, the preliminary objections of defendant, West Penn Power Company, are dismissed, and defendant, West Penn Power Company, shall file its answer within 20 days after notice of the filing of this decision.