486 A.2d 406

## The PHILADELPHIA NATIONAL BANK

v.

## John W. CALDWELL and Nancy C. Caldwell, His Wife, Appellants.

Superior Court of Pennsylvania.

Argued May 1, 1984.

Filed Nov. 23, 1984.

Reargument Denied Jan. 22, 1985.

Petition for Allowance of Appeal Denied July 9, 1985.

562

Joseph F. Mulcahy, Jr., Chester, for appellants.

Matthew S. Donaldson, Jr., Media, for appellee.

Before SPAETH, President Judge, and BROSKY and CIRILLO, JJ.

BROSKY, Judge:

This appeal is from the dismissal of appellants' counterclaim in a civil action. Appellants argue only that it was error for the trial court to treat on the merits, at that early stage of the proceedings, the preliminary objections to the counterclaim. As a general proposition of law, appellants are correct. However, due to the type of preliminary objection which was considered by the trial court—a de-

murrer—we conclude that the general rule is not applicable *sub judice.*[1] Affirmed.

\* \* \*

The relevant procedural history of this case can be briefly summarized. Appellants obtained a credit card from appellee and subsequently received bills for charges which they denied having incurred. Appellants did not pay this bill. Upon notification appellee is alleged to have agreed to drop the charges in question from appellants' bill but subsequently they reinstated the charges. Eventually appellee brought an action seeking to recover the unpaid sum in question and appellants counterclaimed. The counterclaim sought compensation for impairment to appellants' credit rating and mental anguish caused by harassing phone calls received at home and at work. In addition appellants stated that they were entitled to payment for the legal expenses incurred in the defense of appellee's suit. Appellee responded to the counterclaim by filing a preliminary objection, claiming that appellants had not stated a cause of action; which the trial court sustained by dismissing appellants' counterclaim. This appeal is taken from that dismissal.[2]

\* \* \*

Appellants argue that the trial court committed reversible error in ruling on appellee's preliminary objection at that stage of the case. They rely upon the Pennsylvania Supreme Court case of *Broido v. Kinneman,* 375 Pa. 568, 101 A.2d 647 (1954). *Broido* held that when a case contains a counterclaim, preliminary objections should not be decided

---

1. Appellants raise no issues regarding the validity of the trial court's conclusions of law in granting the demurrer. Appellant only argues the impropriety of the trial court having ruled upon the preliminary objection at that stage of the proceedings. Consequently, we do not review the trial court's conclusions of law, only the procedural propriety of its having ruled at all.

2. The rationale for the dismissal, contained in the trial court opinion, was the insufficiency of the facts alleged by appellants to entitle them at law to damages. As noted above, those conclusions are not before us due to the manner in which appellants framed the issues for our review.

against one of the parties before the case has gone to the fact finder and only one judgment disposing of all the claims should be entered.

> In a case such as this, where the claim and counterclaim both grow out of one and the same contract or transaction, it is inexpedient for a court to pass preliminarily with finality upon the claim of one of the parties before disposing of the case as a whole by the entry of one all-conclusive final judgment. To proceed otherwise would be likely to bring about a piecemeal disposition of reciprocal claims involved in one action with an extension of the litigation through added arguments and appeals, attendant postponement of the ultimate final result and consequent increased expense to the parties. It could, moreover, produce an unfair situation by implication when the remaining issue comes up for determination.

> There is a still further reason why the preliminary objections should not have been entertained by the court below. Orderly procedure requires that a court not treat with a question of law unless and until its solution is essential to the proper disposition of the matters litigated. In short, questions decided prematurely may become moot or otherwise unimportant. Thus, if, upon a trial of this case, both the claim and the counterclaim are submitted to the jury and a verdict for *the plaintiffs* results, it will render immaterial the question whether the defendants retained a right to sue for their loss upon a resale of the property. The time for the decision of that question will properly arise on the plaintiffs' appropriate motions if and when *the defendants* obtain a jury's verdict.

*Id.*, 375 Pa. at 572, 101 A.2d at 649.

Appellee argues in response that *Broido* is inapplicable here because appellants do not allege a breach of the contract, the credit card agreement. This overlooks the language of *Broido* quoted above, "... where the claim and counterclaim both grow out of one and the same contract *or transaction* ...". (emphasis supplied). It is apparent that the counterclaim did grow out of the same transaction,

namely the non-payment of the purported credit charges. The question of the validity of this debt was central to both the claim and the counterclaim.

■ Further, we conclude that the two-part rationale of *Broido* is applicable *sub judice*. The piecemeal disposition of the reciprocal claims would, indeed, have been avoided had *Broido* been followed. In fact, the instant appeal would not now be before this Court. In addition, the potential for mootness was quite real if the case had gone to the fact finder prior to the disposition of questions of law. If the fact finder had decided that appellants did owe appellee the sum in question, the counterclaim would have been decided on that ground alone, obviating the need for the trial court to rule on legal questions.[3]

Thus it would appear that appellant prevails and the rule in *Broido* should be applied here. Looking ahead, however, certain insuperable difficulties are apparent. Namely, if the issue raised in the preliminary objection in the form of a demurrer is correct, if appellants have not stated a cause of action—how would the trial court charge the jury? The trial court must, of course, decide what the applicable law is before instructing the jury on it. In making that decision he must, in effect, rule on the demurrer. Should the trial court conclude that there is no applicable cause of action based on the facts of the case, how would he charge the jury? Obviously, he could not direct them to deliberate and he would thereby be working a violation of *Broido's* rule.

3. While questions of law presented by preliminary objections are normally to be disposed of promptly, *Municipal Water & Sewer Auth. of Center Twp. v. Northvue Water Co.*, 7 Pa.Cmwlth. 141 at 146, 298 A.2d 677 at 680 (1972), that norm is not applicable where a counterclaim has been added. The rationale for this is obvious. If a claim, which is not accompanied by a counterclaim, is dismissed, or if both the claim and the counterclaim are dismissed, preliminarily on a matter of law, that is the end of the case in the trial court. But, where only either the claim or counterclaim is dismissed the remaining cause of action must still proceed to the fact finder. That being the case, it is expedient to allow both claims to reach the fact finder. No extra litigation ensues and much fragmentation of the case may thus be prevented.

A convoluted procedure would allow for the application of *Broido's* rule while avoiding this impasse. The trial court could postpone ruling on the demurrer and let the case go to the jury initially only on the central factual questions involved. Here, for example, the court could instruct the jury to determine as a matter of fact whether or not appellant had incurred the debt in question. Then, if the jury concluded that appellants had incurred the debt, there would be no need to rule on the demurrer to the counterclaim. If, on the other hand, the jury found that appellants had not incurred the debt, the trial court would then rule on the demurrer. Should the trial court hold, as a matter of law, that the demurrer be sustained, the case would be concluded. If, to the contrary, the trial court found that the demurrer should not be sustained, that appellant had stated a cause of action, he would then charge the jury on damages.

We decline to impose this procedure on the Courts of Common Pleas. The awkwardness of implementing this unwieldy mechanism would appear to outweigh the advantages to be gained by *Broido's* rule.[4] Also, we are loath to promulgate such extensive procedures without explicit authorization in the Rules of Civil Procedure or from this Commonwealth's high court.

▪ With these considerations in mind, it appears that the preferable course of action is to hold that *Broido* is not applicable to a preliminary objection in the form of a demurrer. Accordingly, we so hold.[5]

4. When the preliminary objections involve issues other than demurrers, *Broido* is, absent other developing case law, still applicable.

5. We have the ability to so restrict the application of *Broido* since that case did not involve a demurrer, but a question of contract interpretation—whether one party had waived his right to that cause of action through a provision of a contract. (Nor have later cases applied *Broido* in a demurrer context.) *Broido*, like all case law, is limited to its underlying facts.

"General expressions in an opinion must be considered in the light of and cannot be dissevered from the facts of that case; what is actually decided and controlling is the law applicable to the particular facts of that particular case and while all other statements and

Having concluded that *Broido* does not apply to the case before us, it follows that appellants' argument fails.

Order affirmed.

SPAETH, President Judge, files a dissenting opinion.

SPAETH, President Judge, dissenting:

I am not persuaded that a demurrer is different in any relevant way from the preliminary objection in *Broido v. Kinneman,* 375 Pa. 568, 101 A.2d 647 (1954). Nor am I convinced that application of the rule in *Broido* to a demurrer would require the Courts of Common Pleas to use "convoluted procedure[s]" or "unwieldy mechanism[s]". *See* majority op. at ——, ——. I am therefore unwilling to join the majority in what appears to me to be a departure from precedent established by our Supreme Court; rather, I believe that in reliance on *Broido,* we should reverse the order of the trial court.

The majority's opinion states that there would be certain "insuperable difficulties" if we were to follow *Broido* where the preliminary objection to the counterclaim is a demurrer. Majority op. at ——. The difficulty perceived by the majority is that if the preliminary objection is well taken, and the counterclaim does in fact fail to state a cause of action, how would the court charge the jury? *Id.* I suggest, however, that this overlooks the fact that in *Broido* the same "difficult[y]" was present but the Supreme Court did not view it as "insuperable". There the plaintiff's preliminary objection to the counterclaim claimed that a

conclusions therein are entitled to great consideration they are not controlling."
*In re Trust Estate of Pew,* 411 Pa. 96 at 105, 191 A.2d 399 at 404 (1963). The broad language of the above-quoted paragraphs from *Broido* is, thus, strictly speaking, *obiter dicta.* More precisely, the paragraphs in question are the *ratio decidendi* of the decision and, as such, are *dicta.* See R. Aldisert, The Judicial Process, 1976 at 799. While we quite properly endeavor to implement even the *dicta* of our state Supreme Court, we must use our judgment to decide when the gymnastics involved in such implementation are so grotesque that it is reasonable to conclude that court handing down the opinion could not have intended them.

provision of the contract between the parties precluded the defendant's counterclaim. If in fact the plaintiff's argument had been correct, the same "insuperable" difficulty would have been present. It would have been impossible to allow the jury to decide a claim that was, as a matter of law, insufficient.

The majority, mistakenly, I believe, interprets *Broido* as requiring that a counterclaim must always be decided by the jury. *See* majority op. at ——. However, *Broido* does not require that all counterclaims be decided by a jury but only that one final judgment be entered on all claims arising out of the same contract or transaction. The Supreme Court's concern in *Broido* was that sustaining preliminary objections to a counterclaim at the beginning of an action "would be likely to bring about a piecemeal disposition of reciprocal claims with an extension of the litigation through added arguments and appeals, attendant postponement of the ultimate and final result and consequent increased expense to the parties." *Broido v. Kinneman, supra,* 375 Pa. at 572, 101 A.2d at 649. This concern is wholly applicable to this case. The trial court's docket entries disclose that the complaint in this case was filed in October 1981, and that plaintiff's preliminary objections to defendant's counterclaim were sustained on November 8, 1982. An appeal from that order was filed on December 3, 1982; it is now late 1984. By departing from *Broido,* and allowing trial courts to sustain a demurrer to a counterclaim at the outset of a case, the majority encourages piecemeal disposition of reciprocal claims. The result here is that a case that should have been decided in 1982 will not be decided until, at the earliest, 1985, with further appeals, delay, and expense to follow.

The solution to the "insuperable difficult[y]" seen by the majority is, I suggest, quite simple. Since, contrary to the majority's belief, *Broido* does not require that all counterclaims be decided by a jury, but only that one final judgment on all claims be entered, the trial court should defer decision on the preliminary objection until both the plaintiff

and the defendant have presented their evidence. Then, if the preliminary objection is well taken, the court, upon motion, should dismiss the objected-to claim, and the remaining claim should proceed in its normal course to the jury. A final judgment could then be entered and an appeal, including a challenge to the granting of the motion for dismissal, could be taken.

The order of the trial court should be reversed.